[Crim. No. 1725. Second Appellate District, Division One.—October 10, 1928.]

THE PEOPLE, Respondent, v. FRED PETTINGER, Appellant.

298

E. W. Howell for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, James C. Hollingsworth, District Attorney, and Don R. Holt, Deputy District Attorney, for Respondent.

CRAIL, J., *pro tem.*—▉ No appeal lies from an order denying a motion in arrest of judgment, but the order may be reviewed on the appeal from the judgment. (*People* v. *Bundy,* 168 Cal. 777 [145 Pac. 573]; *People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143].)

The information reads as follows: "The said Fred Pettinger, on the 8th day of May A. D. nineteen hundred twenty-eight within the said county of Ventura, state of California, and before the filing of this information, did then and there, wilfully, unlawfully, feloniously and burglariously enter

the Murr Bros. Service Station, of N. Murr and Ellis Murr, at A Street and Oxnard blvd. in the city of Oxnard, in said county of Ventura, with the felonious intent then and there to commit the crime of theft.'' To this information defendant pleaded ''not guilty,'' and ''not guilty by reason of insanity.'' Only one trial was had and one verdict rendered, to wit: ''Guilty as charged.''

Respondent proved that appellant, on the night of May 8th, or in the early morning of May 9, 1928, drove up to the said service station in a Ford car and, after waiting a short time, with a pair of pliers broke out a window light. He then lifted out and placed in his car a sales-registering device, and drove off. All of which the defendant subsequently admitted to the officers who arrested him, and to the court when he was sentenced.

Appellant first contends that the information does not state a crime because it is indefinite as to the place where it was committed, and contends that ''the location given is only a street intersection.'' An examination of the information, set out above, shows that the city, county and state were given, and the location was not indefinite.

It is next contended that the words ''service station'' do not come within the purview of section 459 of the Penal Code which in defining burglary refers to ''any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building'' etc.

The evidence showed that the place which defendant entered was a store with a door containing a glass top and a window; that it was used for the sale of gasoline and auto supplies and for general merchandising. It had been closed on the night of the burglary by one of the owners, and was locked with a Yale lock.

''Service station'' in modern parlance commonly means a building from which gasoline and auto supplies are sold. This use of the words ''service station'' indicates a building, just as do the words railway station and police station.

It is next contended that the only proof of entry was that appellant broke a window and lifted out through the opening the sales register. Such an entry, however, is sufficient. It is not necessary to the commission of burglary that the defendant get his whole body into the building.

300

The introduction of his arm is sufficient. (*People* v. *Allison*, 200 Cal. 404 [253 Pac. 318].)

It is next contended that the Statutes of 1927, at page 1149 (sec. 1026, Pen. Code), provide that where the pleas are not guilty and not guilty by reason of insanity, as in this case, there shall be two trials and two verdicts, whereas the jury returned but one and in that respect appellant was convicted without due process of law. Section 1026 of the Penal Code, in so far as it affects this case, reads as follows:

"When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury, in the discretion of the court. In such trial the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed. If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law. . . . "

An examination of the reporter's transcript shows that the People called four witnesses to prove the crime alleged in the information and rested. The defendant then called four witnesses in his behalf. By each of these witnesses the defendant attempted to prove his defense of insanity and proceeded to offer what evidence he had on the question. Without any suggestion or direction from the court the defendant proceeded under the method of trial prevailing prior to the adoption of section 1026; himself adopting the procedure, and voluntarily accepting the burden of advancing the evidence on the issue of insanity, thus expressly consenting to and inviting the order and method of trial adopted. He made no request for separate trials, but, on the contrary, by his own conduct and by the acquiescence of the district attorney, proceeded to consolidate the trials of the issues under the plea of not guilty and not guilty

by reason of insanity. The court on its part instructed the jury on the question of insanity and likewise instructed the jury on the forms of verdict which it should return, including a form of verdict in case it found the defendant not guilty by reason of insanity.

Now, after conviction, the defendant claims the trial court erred in proceeding as it did.

It will be noticed that the statute authorizes the trial court in its discretion to submit the issue of insanity to the same jury which tries the general issue. And in this case there was a mere consolidation of the trial of the two issues.

■ While the constitution of the state of California provides that the right of trial by jury shall be secured to all persons and shall remain inviolate, the only right which it guarantees is that the citizens of the state shall have an opportunity to be tried by a jury in cases in which it is exercised in the administration of justice according to the common law. (*People* v. *King*, 28 Cal. 265.) It does not guarantee two separate trials by jury, and "it does not purport to direct what procedure is to be followed in the exercise of the right." (*People* v. *Hickman*, 204 Cal. 470 [268 Pac. 909].) The essence of trial by jury is that controverted facts shall be decided by a jury. In the instant case the defendant had every controverted fact raised by his pleas submitted to and decided by the jury. He was permitted to interpose and to submit to the consideration of the jury every issue and every defense that would have been open to him if he had had two trials and every essential right of defendant involved in a trial by jury was safeguarded.

■ An appellate court will not reverse a case by reason of an alleged error in the proceedings occasioned by express consent of the defendant and his counsel, unless bound to do so by some controlling rule of law. (*People* v. *Patrich*, 118 Cal. 332 [50 Pac. 425].) And it is well settled that a defendant cannot complain of errors invited by him. (*People* v. *Witty*, 138 Cal. 576 [72 Pac. 177].)

Section 4½ of article VI of the constitution was not designed to repeal or abrogate the guaranties accorded persons accused of crime by other parts of the same constitution or to overthrow all statutory rules of procedure in criminal cases. For example, a denial to a defendant accused of a felony of a trial by jury would necessitate a re-

versal, even though there had been the clearest proof of guilt. (*People* v. *O'Bryan*, 165 Cal. 55 [130 Pac. 1042].) But in the instant case there was no constitutional guaranty denied and no essential right of the defendant disregarded.

It appears to the satisfaction of this court that the result was just and that it would have been reached if the statutory rule of procedure had been followed.

■ Complaint is made that the defendant was not permitted to prove his "good character and reputation." In this connection the following question was put to one of the witnesses: "Q. What kind of a reputation has he out there?" The witness had not been qualified as a character witness and the question as propounded did not include the traits of character involved in the crime charged. Therefore, an objection was properly sustained. "Practically the same question was put to five witnesses," says the appellant, with the same objection and the same ruling.

Appellant complains of the refusal of the trial court to give to the jury three instructions offered by him. These instructions, where correct and proper, were adequately covered by the instructions which were given.

■ Lastly, appellant accuses the district attorney of improper conduct in his statements during the trial. The statements made by the district attorney were in objection to statements being made by counsel for defendant. The defendant's attorney was stating facts which were not in the evidence and the district attorney had a right to object. But the trial court, through an abundance of caution, instructed the jury to disregard the statements made by the district attorney.

Judgment and order denying motion for a new trial are affirmed.

Houser, Acting P. J., and York, J., concurred.