CREEK *v*. STATE.

4543      .                  216 S. W. 2d 787

Opinion delivered January 17, 1949.

*Vol T. Lindsey* and *Claude Duty*, for appellant.

*Guy E. Williams*, Attorney General and *Arnold Adams*, Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Information charged William A. Creek with nighttime burglary—breaking and entering a chicken house belonging to Ray Hurd, with intent to steal. Defense was that the screened area alleged to have been penetrated had (a) been previously broken by an act other than that of the accused, or (b) even if the opening attended admitted conduct, it was insufficient for bodily entrance, hence the alleged purpose to take the property was defeated by physical conditions. Prejudicial argument by the Prosecuting Attorney is also complained of.

Hurd owned chicken houses near Gateway and raised "fryers" commercially. For some time feed had mysteriously disappeared and theft was suspected. O. E. Combs was employed unofficially to guard the premises and had concealed himself in an advantageous position more than thirty feet from the buildings while Hurd and his family attended evening church services. Two men, later identified as appellant and Dale Legg, quietly ap-

proached a screened window. Each carried a burlap sack, and at least one of them was in contact with the window. Combs' sudden appearance with a shotgun halted activities, and was followed by action of the Sheriff in formally arresting the two.[1]

Consideration of all testimony—that relating to the opening, how and when made, its proximity to a canvas shade or screen-aid within, possibility of reaching through and withdrawing property pursuant to a probable purpose—these actualities and the reasonable inferences arising from established conduct, gave substance for the jury's verdict, and it will not be disturbed for want of evidence.[2] *Ingle and Michael* v. *State*, 211 Ark. 39, 198 S. W. 2d 996. The defendants were not, as a matter of law, entitled to credit for non-completion of an enterprise interrupted by the guard after a sufficient opening had been made.

Appellant thinks a mistrial should have been ordered when the Prosecuting Attorney in his closing argument asked why, if the defendants were without criminal record, they did not take the stand. In answer the Prosecuting Attorney insisted that his remarks, if prejudicial, were invited when a defense attorney assured the jury that his clients were there "with no criminal record whatever." Following discussions regarding the Court's tentative ruling that the statements objected to were admissible, the Prosecuting Attorney withdrew the remarks, and the Court instructed that they should be wholly disregarded. The direction was explicit, and seemingly satisfied appellant at the time, for no objec-

---

[1] Appellant and Legg were joined in the information and tried together. Each was given a prison sentence of three years. The Court favored Legg with probation and he has not appealed.

[2] A part of Combs' testimony is that "They went to the window and through the screen." An explanation was, "One took out a gunny sack and walked up to the window, and they started in through the screen when I pulled back the gun, and that was the end of it." The witness was certain one of the men had hold of the wire and had at least started to take it off. Question: "A man . . . could have reached from the outside of the window inside and gotten a chicken down there—a man with a reach like these defendants?" Answer: "Yes, sir. It would have been easy to reach in there and get a chicken from underneath, or they could have reached right down the side of the screen, and if there was one there he could have gotten a chicken in a minute."

tion to its insufficiency was made. In these circumstances it was not error to submit the issues.

Affirmed.