221 P.2d 1055

**STATE v. GRUBAUGH.**

**STATE v. HANCOCK.**

No. 5272.

Supreme Court of New Mexico.

Aug. 31, 1950.

Hanners & Ward, Lovington, for appellants.

Joe L. Martinez, Atty. Gen., Peter N. Chumbris, Asst. Atty. Gen., Hilario Rubio, Asst. Atty. Gen., for appellee.

LUJAN, Justice.

Roy Grubaugh and Grady Hancock were jointly tried under separate informations, the charging part of which read as follows: "That the defendant, Grady Hancock, did in Lea County, New Mexico, on the 15th day of August, unlawfully and feloniously break and enter in the night time a shop and warehouse, to-wit:—The Car Parts Depot, Incorporated, Hobbs, New Mexico, with the intent to commit larceny therefrom, contrary to the Statutes in such cases made and provided."

The information against Roy Grubaugh was identically worded. Upon the trial they were convicted of burglary and appeal.

Section 41-906, Compilation 1941, provides: "Every person who shall break and enter, in the night-time, any office, shop, or warehouse, not adjoining to nor occupied as a dwelling-house, with the intent to commit the crime of murder, rape, robbery, larceny, or any other felony, shall be punished. * * *"

The evidence discloses that the night watchman on two previous inspection trips, prior to 3:30 o'clock on the morning of August 15, 1948, found the back door of the Car Parts Depot locked and in perfect condition. This door was equipped with a

Yale style lock which is opened from the outside with a key and has a little knob on the inside. On his final inspection of the premises, on the above date, before going off duty, at approximately 3:30 in the morning he encountered the defendants working on the back door of the building but both broke and ran away before he could arrest them. He later apprehended them and turned them over to the city police. Upon examination of the premises it was found that the ground had been dug out about three inches deep at approximately four feet from the door. Two planks, about four feet long, were lined up against the door sill. The lock had been pried open by inserting a slim piece of metal and the door was ajar two inches. There were several marks made by a metal instrument being pushed between the facing and the door also some marks made below the lock and where the lock was. The defendants did not testify.

The sole error assigned is the overruling of their motion for a directed verdict at the close of the State's case, and reliance is placed on the failure of the prosecution to show an entry. The evidence shows that the lock had been pried by the use of some metal instrument, during the time, and that the door was open some two inches, the approach of an officer and the flight of the defendants.

The defendants' contention that the evidence is insufficient must be sustained. We fail to find any substantial evidence to prove an entry.

There is no evidence in the record that either of the defendants actually entered the building. To warrant a conviction for burglary, the evidence must be sufficient to prove not only a breaking but an entry. Evidence which leaves it wholly to conjecture, as in the case at bar, is wholly insufficient. Sorenson v. United States, 8 Cir., 168 F. 785; State v. McCall, 4 Ala. 643, 39 Am.Dec. 314; Walker v. State, 63 Ala. 49, 35 Am.Rep. 1; Gaddie v. Commonwealth, 117 Ky. 468, 78 S.W. 162, 111 Am.St.Rep. 259; Mattox v. State, 179 Ind. 575, 101 N.E. 1009. See, also, 9 C.J. page 1020, 12 C.J.S., Cancellation of Instruments, § 51, and Wharton on Criminal Law, 11th Ed. page 1203.

If we were authorized to conjecture, we might reason that in prying the lock, either of the defendants *might* have inserted his hand in the building. Assuming this would have constituted entering, there was no proof of that fact, nor was there any evidence from which it could have been reasonably inferred.

It may be that the defendants were guilty of violating Section 41-908, Comp.1941, if they had in their possession tools "adapted, designed or commonly used for the commission of burglary, * * * under circumstances evincing an intent to use or employ or allow the same to be used or employed in the commission of a crime * *."

The act of prying the lock as shown by the record, in and of itself, did not, and could not, constitute the crime of burglary, in the absence of the required proof that there was an entry with intent to commit a felony, Section 41-906 supra.

The judgment is reversed and the cause remanded with direction to award the defendants a new trial. It is so ordered.

BRICE, C. J., and McGHEE, J., concur.

SADLER and COMPTON, JJ., dissenting.

SADLER, Justice (dissenting).

The defendants urge a single claim of error, namely, that the trial court erred in denying the motion for an instructed verdict in their favor at the close of the state's case. They rested when the state did and elected not to put on any evidence themselves. The sole ground urged below in support of the motion was and here is that there was no proof of entry, without which a verdict of guilty could not be sustained. It will be agreed that entry must be proved but not that the verdict lacks evidence sufficient to support it in this particular. On the contrary, it is my view there are facts in evidence which together with inferences properly to be deduced from them will support a finding of entry and thus support the verdict.

The "breaking" is established beyond all peradventure of doubt and the evidence on that issue need not be discussed. It is important, however, to determine when the breaking occurred with reference to other established facts. It is to be recalled the officers found a runway from the door sill to the ground level upon which the accused obviously planned to roll the safe from the building. As the officer described the runway the boards or planks of which it was made were four feet in length and extended that distance into the alley from the door sill to the point where he located a trench three inches deep prepared to receive them. The trench either had been dug or beaten in the ground to receive the planks and steady the improvised runway. Thus the planks of which the runway was made were placed flush against the door sill at one end and were resting in the trench at the other end.

The pertinent inquiry presents itself as to when the labor of constructing this runway took place—before or after the "breaking". The jurors as practical men must have believed the accused would never undertake the otherwise futile task of making the runway unless and until they had made sure of their ability to effect an entry. Furthermore, drawing to their aid the law of probability, the jurors must have known that men do not prepare a runway without some knowledge of the weight and size of the object to be transported over

it, more especially the gauge of the wheels upon which the object rests and is to be rolled from the building. The only means by which the accused could get that information in the case at bar was to examine the safe and form some estimate of it in the respects mentioned, if not actually measure the distance between its wheels.

But the safe was inside the building located near a window at the front. In order to reach it from the rear door one would be compelled to travel the entire length of the building. Nothing more appearing, and a breaking being abundantly established, a runway on which to remove a safe being found at the point of the "breaking" at one end of a building and an object as heavy and bulky as the ordinary safe being found within and at the other end of the building, it requires no resort to surmise or speculation, as counsel for defendants so vigorously argues it does, for the jury to conclude an entry was made to inspect the safe before undertaking preparation of the runway.

Once it is agreed that the accused had sprung the lock and opened the door to the building before preparing the runway upon which it was planned to remove the safe, it is more difficult to conceive means by which they could engage in the work of building the runway and avoid effecting an entry as legally defined than to visualize them at this work without doing so. The enterprise upon which they were engaged does not suggest them to be men learned in the law and, unmindful as they were of the legal nicety of reasoning which marks the difference between entry and non-entry following a breaking, and working in an open space immediately over the door sill in laying one end of the runway, it would have required conscious effort on the part of the accused so laboring to avoid having some portion of his body cross over the imaginary line, mere inches away, marking "entry." The least protrusion, however slight, of any part of the body is sufficient to constitute "entry." 12 C.J.S., Burglary, § 10, p. 674; People v. Pettinger, 94 Cal. App. 297, 271 P. 132; State v. Chappell, 185 S.C. 111, 193 S.E. 924.

As men of ordinary intelligence with practical every day experience in human affairs, the jurors must have believed that one of the accused, engaging himself in no such conscious effort of the sort mentioned, in his bodily movements while so employed did cross this line with some portion of his body. This, too, regardless of whether, as seems quite likely, one or both entered and inspected the safe. These theories, finding support in the evidence and in legitimate inferences deducible therefrom, are sufficient to sustain the verdict returned by the jury.

If either defendant made an entry with any part of his body, both are equally guil-

ty. State v. Kidd, 34 N.M. 84, 278 P. 214; State v. Mersfelder, 34 N.M. 465, 284 P. 113. Cf. Territory v. Gallegos, 17 N.M. 409, 130 P. 245. And it is not essential in a prosecution for burglary that the state prove the particular manner of entry, since breaking and entry may be proved by circumstantial, as well as by direct, evidence. People v. Basuino, 118 Cal.App. 158, 4 P.2d 971; People v. Cascino, 137 Cal.App. 73, 29 P.2d 895; People v. Reeves, 360 Ill. 55, 195 N.E. 443; Wilborne v. Commonwealth, 182 Va. 63, 28 S.E.2d 1. Nor, an entry being established, is a defendant to have credit, "as a matter of law," because the arrival of an officer or others on the scene prevents the completion of his criminal enterprise. Creek v. State, 214 Ark. 429, 216 S.W.2d 787; Mouser v. State, 215 Ark. 131, 219 S.W.2d 611; People v. Cascino, supra; Johnson v. State, 75 Ga.App. 581, 44 S.E.2d 149.

While the evidence of entry is not as strong as might be desired, in my opinion it does not lack substantial quality. As said by the Supreme Court of California in People v. Flynn, 73 Cal. 511, 15 P. 102, 103: "It rarely happens that an offense, like that here complained of, can be proved by witnesses who saw and recognized the defendant in the act, and resort must, therefore, ordinarily be had to circumstantial evidence."

A careful reading of the record satisfies me that the finding of entry embraced within the general verdict of the jury is not without substantial support in the evidence. State v. Montoya, 23 N.M. 657, 170 P. 733; State v. Lott, 40 N.M. 147, 56 P.2d 1029. It is neither surmise nor speculation on the part of a jury to draw reasonable inferences from affirmative facts proven. Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197; State v. Jones, 39 N.M. 395, 48 P.2d 403. The judgment of the trial court is without error and should be affirmed. The majority concluding otherwise, for the reasons given,

I dissent.

COMPTON, J., concurs.