THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
HÉCTOR SORIANO RODRÍGUEZ, Defendant and Appellant.

No. CR-64-239.    Decided March 15, 1965.

*Olga Cruz Jiménez*, attorney designated by the Supreme Court to offer legal assistance to defendant on appeal. *J. B. Fernández Badillo, Solicitor General*, and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The prosecuting attorney charged appellant with the offense of burglary in the first degree, consisting in that during the night of the 10th to the 11th of May 1963 he broke into Mueblería Mendoza located in Caguas with the intention of committing theft or pilferage. A trial without a jury was held and defendant was found guilty and sentenced to from one to two years in the penitentiary.

In this appeal he assigns three errors. In the first he alleges that "the People did not prove the specific intention of defendant to commit theft or pilferage" and in the second "that the People did not prove the illegal entrance into the establishment."

■ We agree with appellant that the People was under obligation to prove those two essential elements of the offense of burglary. *People* v. *Torres*, 81 P.R.R. 659 (1960). We must now decide whether the evidence proved them. As summarized correctly by the Solicitor General, it is as follows:

". . . Juan Carrasco, witness for the prosecution, testified that he saw when on the night of May 10, 1963 the defendant stood in front of Mueblería Mendoza, kicked the glass window; bent down and picked up an object and then left rather fast, turning down at Dr. Rufo St. (Tr. Ev. 4.) Upon questioning by the defense this witness specified that he had left right behind the defendant as they went out of the establishment where they both were; that he was about twenty feet behind the defendant; that he saw when defendant broke the glass and when 'he bent down and stuck his hand through the hole in the window,' but that he was unable to see what he took, because 'he bent down very fast and turned down the street . . .'

in the direction of the hospital; that afterwards he (the witness) went to the police station where a telephone call was received from the hospital; that later on he was taken to the hospital where he saw the defendant. (Tr. Ev. 6–7.) On redirect examination by the prosecuting attorney the witness testified that the defendant 'bent towards the show window and took the object from inside the window.' (Tr. Ev. 8.)

"Policeman José M. Torres testified that he investigated the charges made against defendant; that when he went to Mueblería Mendoza on the night of the occurrence he found a glass window broken; that while he was there he was called to the hospital because there was an injured man 'who had particles of glass' and that he found 'this boy [the defendant] who had wounds on the arm and on his body'; that at that time defendant alleged that a gang had given him a beating on the road leading to San Juan; that 'there was an eyewitness who identified defendant'; that before Judge Donato defendant admitted having broken the glass, but that he had not taken anything. (Tr. Ev. 8–10.)

"The testimony of Carmen García Velázquez, manager of Mueblería Mendoza in Caguas, was that she had closed the establishment between five-thirty and six in the afternoon, of May 10, 1963 and that the glass show windows were in good condition; that next day she found one of the windows broken and that a Matchester radio, model 356, worth $75 and which was in the show window was missing." (Tr. Ev. 10–11.)

In *People v. Torres, supra,* we decided that both the illegal entrance and the existence of a specific intention to commit theft or pilferage may be established by means of circumstantial evidence.

However, as the evidence shows, after breaking the glass appellant stuck his hand through the hole in the window and took an object from inside, which, according to the testimony of the manager of the furniture store, must have been the radio which was missing. Therefore, the intention to commit theft or pilferage was fully established. The circumstantial evidence indicates that he actually stole a radio.

It is maintained also that the illegal entrance of appellant into the establishment was not proved. It is argued that the only evidence which tends to prove the fact of illegal entrance is the testimony of Juan Carrasco who "testified that defendant-appellant, after kicking the glass, bent down and took an object." "This testimony—he continues arguing —does not connect the defendant-appellant with the fact of taking objects from the furniture shop's window, or establishes whether in effect the defendant made any movement to introduce his body or part thereof into the establishment."

Appellant rests his case on an erroneous premise. Albeit witness Juan Carrasco testified on direct examination in the manner expressed by appellant, it is also true that on cross-examination said witness testified as follows:

"Q. When you saw him bend, did he bend down to pick up something?

A. *Yes, he bent down and put his hand through the hole in the glass.*

Q. Did you testify before today at the Prosecuting Attorney's office?

A. Yes.

Q. Did you tell the Prosecuting Attorney that he had put his hand through the hole in the glass?

A. I did not tell him because he did not ask me. He did not ask me that. *He stuck his hand in.*" (Italics ours.) (Tr. Ev. 6–7.)

■ The illegal entrance was consummated when appellant introduced his hand through the hole of the broken glass in the show window.

In order for the illegal entrance to be consummated in the commission of the offense of burglary it is not necessary that the whole body of the defendant gets into the building; it is enough, as in this case, that he introduce a hand. *People* v. *Pettinger*, 271 Pac. 132; *People* v. *Allison*, 253 Pac. 318; *People* v. *Massey*, 16 California Reporter 402; *Commonwealth* v. *Lewis*, 191 N.E.2d 753; *State* v. *Tierney*, 371

S.W.2d 321; *People* v. *Martone,* 101 P.2d 537; 25 So. Cal. L. Rev. 75.

■ It is further alleged that the trial court erred in discarding altogether the defense of defendant. His defense consisted in that on the day of the occurrence defendant was in state of intoxication and that therefore "he was precluded from forming the specific criminal intention required to commit the offense of burglary in the first degree." He argues that, by analogy, the trial judge should have applied the doctrine in *People* v. *Alsina,* 79 P.R.R. 44 (1956), in the sense that where there exists evidence which could create doubt regarding the mental sanity of defendant at the moment of perpetrating the criminal act, the prosecution is required to prove defendant's sanity.

Section 41 of the Penal Code (33 L.P.R.A. § 87) provides that no act committed by a person while in a state of voluntary intoxication is less criminal by having been committed in such condition. It also provides that where the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which the act was committed.

Defendant tried to establish his state of intoxication with his own testimony. The trial judge was right in not giving him any credit. Defendant testified that on the night of the occurrence he was drinking at a bar located on the road leading to Cayey; that he saw witness Carrasco there and talked to him; that it was about three in the morning when he broke the show window of the furniture shop; that the show window was very well lit; that there was nobody else around at that time; that after breaking the window he bent down to look at a wound he had received on his knee; that he did not stick his hand into the window; that a piece

of glass fell on top of his hand and cut it; that he did not take any radio from the window, and that in that condition he went to the hospital to be cured.

This testimony, with its richness of details, if anything shows that defendant was not at that time deprived of his mental faculties to the extreme that he could not form a specific intention to perform a particular act.

■ In *People* v. *Rosado*, 78 P.R.R. 416 (1955), citing *People* v. *Rivera*, 70 P.R.R. 541 (1949), we stated at page 420:

" 'The rule adopted in those jurisdictions where provisions of law identical or similar to that contained in § 41 of our Penal Code prevail, is that drunkenness—voluntary—must be of such degree or extent that it will deprive defendant of his mental capacity to form the specific intent required by the Code for the conviction of a Crime—or degree thereof—requiring such specific intent, and that *the determination of that fact is essentially incumbent on the jury or on the court sitting without a jury,*' quoting innumerable cases from the United States." (Italics ours.)

■ We added in *Rosado, supra,* that as in the offense of burglary the intent plays an important part, its existence should be left entirely to the trial judge. Precisely, the judge who sat in this case, referring to the testimony of the defendant, stated: "We don't believe he was drunk. Far from being drunk he himself claims that he did not take any radio. If his mind was clear enough to say he did not take any radio, then he was not drunk."

The judgment appealed from will be affirmed.