15805

GORY v. MONARCH MILLS *ET AL.*

(37 S. E. (2d), 291)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, Counsel for Appellants,

*Messrs. Mozingo & Watts,* of Darlington, Counsel for Respondent,

February 21, 1946.

MR. CHIEF JUSTICE BAKER delivered the majority Opinion of the Court.

This appeal is from an order of Honorable T. S. Sease, Circuit Judge, affirming an award of the Industrial Commission. The "Statement of Issues," as alleged by the appellants and adopted by the respondent, follows:

"Where an employee, engaged in 'rounding up' a sand pile for his employer, stops his work and asks a passerby for a cigarette and is struck by such person and falls as a result, is his injury so sustained compensable under the South Carolina Workmen's Compensation Act as:

(a) Arising out of his employment; and

(b) Arising in the course of his employment?"

Respondent was employed by Monarch Mills as a laborer, and on January 5, 1944, he and a number of other laborers were engaged in "rounding up" a sand pile where the sand had become scattered in the course of pouring concrete. Among the laborers engaged in rounding up the sand pile with respondent was a negro by the name of Tom Grier. Respondent asked him for a cigarette and about the time that Grier told the respondent he had no cigarette, another negro, John Lee (nicknamed Suber) Davis was passing the sand pile, and respondent, who had already stopped shoveling, grounded his shovel and asked Davis (or Suber) for a cigarette. Davis, or Suber, as he is more frequently referred to, had no connection whatever with the work in which respondent and the others at the sand pile were engaged. He worked up in the mill, gathering waste—would go to the waste house and get sacks and come back into the mill and get the waste up; and simply happened to be passing near the sand pile at the time respondent asked Grier for a cigarette.

While the testimony of all of the witnesses who were present and described what then and there occurred was different in detail from that of the respondent, yet if there is any evidence on which the Industrial Commission could reasonably rest its award, the Circuit Court and this Court

is bound by its finding of fact. We will report the respondent's version:

"Q. Tell the Commissioner what happened to you while you were out there working.

"A. Well, we was rounding up the sand pile and I asked Tom Grier for a cigarette—

"The Court: Asked who?

"A. Tom Grier, and he started to give me one and I looked back and seen this other boy, and Tom said he did not have a cigarette and I said 'well, never mind, I'll get one from this boy,' and I said 'come here, boy' and he come up behind me then, and I stopped shoveling and set the shovel down, holding the handle and I said 'give me a cigarette,' and about that time he hit me in the back, run into me and knocked me down and fell on me and I broke my leg, when he run into me I sort of spun around and fell and he fell on me. I had rech out for a cigarette and his knocked my hand sorter like this (Demonstrating) and he run into it and that is what spun me around and made me fall. And when I done that I broke my leg.

"The Court: What did he do when he came up to your back?

"A. Well, I seen him coming, and I had reached my hand around like this and asked him for a cigarette and he just run into my hand and that spun me around and made me fall and break my leg.

"Q. Did he fall on top of you?

"A. Yes, sir.

"Q. Did you have the shovel in your hand at that time?

"A. I had set it down and was holding it by the handle.

"Q. Did you say anything to him?

"A. I said 'boy, you done broke my leg'.

"Q. Did you say anything to him before he pushed or shoved you—had you had any words with him of any kind?

"A. No, sir."

Immediately following the foregoing testimony, the respondent testified that it was drizzling rain and the ground

was slippery and muddy. However, neither the Hearing Commissioner nor the Full Commission found as a fact that the slippery condition of the ground around the sand pile had anything to do with respondent falling, so this testimony may be disregarded. Incidentally, the testimony of the other witnesses fails to disclose any such condition, the witness Grier denying, when cross examined by respondent's counsel, that the ground was wet, or that there had been more than a sprinkle of rain, if that, although it was cloudy.

Further on in respondent's testimony and on cross examination, he testified as follows:

"Q. And while he (Uncle Tom) was getting his tobacco out, you told Uncle Tom 'here Suber comes, I'll get one from him'.

"A. Yes, sir.

"Q. And you turned around to get it.

"A. I didn't see him when he got right close to me, I started to reach around for the cigarette, and I had my shovel in my hand holding it, I had set it down, you know, and he run into me and hit my arm and turned me around sorter across this way and I fell and broke my leg.

"Q. So, instead of handing you the cigarette, he just ran into your arm?

"A. Kinder across my shovel like and that spun me around and I fell, I wasn't expecting nothing like that.

"Q. What spun you around was him hitting your arm?

"A. Yes, sir.

"Q. You were getting along all right with your work if it hadn't been for him hitting you, even if it was drizzling rain, and spinning you around, if it hadn't been for that you never would have fallen, would you?

"A. No, sir."

Accepting, in passing on this appeal, respondent's version of how his injury occurred as substantially true, is his injury compensable under our Workmen's Compensation Act? For it to be compensable, the injury would have to arise out of and in the course of respondent's employment.

In *Branch v. Pacific Mills,* 205 S. C., 353, 32 S. E. (2d), 1, and *Eargle v. South Carolina Electric & Gas Company,* 205 S. C., 423, 32 S. E. (2d), 240, it is held that "the two parts of the phrase 'arising out of and in the course of the employment' are not synonymous, and both must exist simultaneously before any Court will allow recovery under a Compensation Act so worded. 'Arising out of' refers to the origin and cause of the injury, whereas 'in the course of' refers to the time, place and circumstances of the occurrence."

There is no dispute that the respondent's injury occurred on the premises of his employer, at the place where he had been assigned to work and during his work hours, but as to the "circumstances," and "the origin and cause of his injury," it appears to us that the respondent is met with insurmountable difficulties. We will consider these together.

At the time of respondent's injury, he had stopped shoveling (the work he was employed to do) for the purpose of procuring a cigarette for his personal pleasure from Davis who was passing near where he was working. Davis had no connection with the labor at the sand pile, but as aforesaid was merely passing by in connection with work he had been assigned to perform. There is not a scintilla of testimony that anything that occurred between respondent and Davis related even remotely to the work that either was then or had been engaged in during their respective employments by the appellant, Monarch Mills. In other words, there was not the slightest connection between their work and the "horseplay" in which Davis engaged immediately following the request made to him for a cigarette, and resulting in the respondent's leg being broken. Even if the harsh inference be drawn that Davis assaulted the respondent merely because he had asked him for a cigarette, yet there is nothing in the testimony that this could be accounted for by any differences which had theretofore arisen between them concerning the work or interest of Monarch Mills, and certainly not as to the labor that either was then performing.

In *Lanford v. Clinton Cotton Mills,* 204 S. C., 423, 30 S. E. (2d), 36, compensation was allowed the claimant for injuries sustained from an assault by a fellow employee because the origin of the assault was a controversy between the claimant and the asaulting employee over the repair of crankshafts for their employer. And in *Thompson v. J. A. Jones Construction Company,* 199 S. C., 304, 19 S. E. (2d), 226, another assault case, it was held to be within the Act because the assault had as its origin a difficulty over the doing of the employer's work. In so holding, Mr. Justice Stukes, writing the opinion of the Court, stated:

"The general rule deducible from these decisions and we think based upon reason and justice is that although an employee be wilfully assaulted by another, whether fellow servant, foreman or outsider, the resulting injury will be deemed accidental and within the terms of the Compensation Law when it can be said that the assault proximately resulted from the prosecution of the employer's business—in the terms of the Act: arose out of and in the course of the employment. Section 2(f)."

But this case is governed by the case of *Elrod v. Union Bleachery et al.,* reported in 204 S. C., 481, 30 S. E. (2d), 73. There the evidence showed that the injury occurred while the deceased employee was doing his work and, therefore, arose during the course of his employment, but the evidence also showed that the difficulty between the two men arose out of a matter totally disconnected with the work of the employer. In reversing the Circuit Court in affirming an award by the Industrial Commission, this Court did not hold that the employer and its insurance carrier had sustained any burden of proof to affirmatively show that the death of the assaulted employee arose from some other cause than that of the employment, but that the claimants had failed to show a case falling within the terms of the Act, the Court. through Mr. Justice Taylor as its organ, saying:

"In the instant case there is no evidence to show that the injury and death of Harry Elrod arose out of his employment, therefore this exception is sustained.

"Since a causal connection is found not to exist between the injury of and death of Harry Elrod and his employment by the Union Bleachery, it is unnecessary to consider the other exceptions."

The opinion in the case of *Mack et al. v. Branch No. 12, Post Exchange, Fort Jackson et al.,* —— S. C., ——, 35 S. E. (2d), 838, was filed after this case was submitted on printed briefs, and hence was not discussed. However, the only similarity between the cases is the fact that the employee, while on the premises of the employer, desired to smoke.

In the instant case, the claimant's accident was not due to anything connected with smoking but to an independent act of a third party. Claimant's desire to smoke was merely an incidental circumstance, the proximate cause of his injury being the act of the passerby. The fact that the party who caused his injury was another employee does not alter the principle involved. Suppose this passerby or other employee became insulted because claimant asked him for a cigarette or because claimant undertook to reach in his pocket and procure a cigarette without his permission and that an assault grew out of the request for an attempt to thus procure a cigarette from the passerby, it could not be soundly held that such difficulty grew out of the employment. The respondent's injuries were not proximately caused by his request for a cigarette or attempt to procure a cigarette, but the proximate cause of his injuries was the unexpected and unforeseen act of a passerby or a fellow employee in hitting him or shoving him. Therefore, by no stretch of the imagination can it be said that the respondent's injuries arose out of his employment.

There being no evidence to support the finding of fact by the Industrial Commission that the accident to the re-

spondent arose out of and in the scope of his employment, which finding was affirmed by the Circuit Court, the order of the Circuit Court is reversed, and the case remanded for entry of judgment for the appellants.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and OXNER concur.

MESSRS. ASSOCIATE JUSTICES STUKES and TAYLOR dissent.

MR. ASSOCIATE JUSTICE STUKES (dissenting):

STUKES, A. J. (dissenting): I do not think that a just and complete adjudication of the issues which fairly arise upon the record is presented by the "Statement of Issues" by appellants and adopted by respondent's counsel for the purpose of their brief. The latter immediately thereafter contains a statement of facts which sufficiently explains the cryptic "Statement" of appellants. But if this were not so, the statement of issues is certainly subject to the elucidation afforded by the facts that (1) the "passerby" referred to was a fellow employee on the premises of the employer and engaged in the performance of the duties of his employment; and (2) that the word "struck" may mean accidental and not intentional, in the nature of an assault. Indeed, implicit in the award of the Commission is the fact that the injury was the result of an accident. The aim of the inquiry of the Court is to mete out justice, which surely should not be thwarted by the clever wording of counsel's statement of the issue and the possibly inadvertent adoption of such by his adversary. The rights of claimant are the subject of the controversy and they should be found and enforced so far as a fair appraisal of the record permits. One of the objects of the compensation act is the avoidance of the pitfalls of the common law and technicalities should not be allowed to defeat that purpose.

Incidentally, the injured employee in this case is, unmistakably from the record, an ignorant colored man, too poor to provide needed medical attention from his own means and

he has a dependent family. The Safety Director of the employer testified that he investigated the serious accident "the next day or the following, just as soon as I heard about it", and further that as a result of his investigation he telephoned the physician, to whom the employer first sent the injured claimant, that the latter should continue treatment only upon financial arrangement therefor by claimant, or to quote his own words: "I phoned him and notified him that the Monarch Mills did not assume liability for the accident, and stated to him that if he wanted to continue treatment of the case he would have to make arrangements with the colored man for the Company did not assume liability at all." The evidence discloses that the second physician who saw claimant thought he had effected a satisfactory cure but advised that he have an $x$-ray picture. The doctor's testimony thereabout follows:

"I told him he should have an $x$-ray taken, I don't know whether he did or not. I always like to finish up these cases, and an $x$-ray picture is the best evidence you can have of a broken bone, but these bones were in exact apposition, and I considered the leg well healed. He told me he could not go to anyone outside of his family for any help, that the Mill would not pay for his treatment and he could not ask the mill authorities for any money, so I just put it up to him and wrote this note to the Community Hospital and sent him up there for the $x$-ray if he wanted to pay for it."

Claimant testified in reply that he never had the $x$-ray made because, as he said: "I never did have the money." I think it a necessary inference from all of the evidence that claimant's present disability, possibly now permanent, is due to the lack of proper and continuous medical attention, which he could not provide for himself for lack of means.

The Industrial Commission is not composed of juridical experts and the results of their efforts at administration of the compensation act cannot be reasonably required to be exact in form. The law itself provides for informal procedure (Sec. 7035-57, Code of 1942) and this Court has

said that the niceties of common-law pleading need not be observed and that the statements by the Commission of their factual findings and conclusions of law need not be separate in form. *King v. Wesner,* 198 S. C., 49, 16 S. E. (2d), 289. *Henderson v. Graniteville Company,* 197 S. C., 420, 15 S. E. (2d), 637. With these principles in mind, let us see what the Industrial Commission has stated as their findings in this case.

I quote the second paragraph of the "Findings of Fact":

"2. That claimant, Robert Lee Gory, suffered an acci-, dent on January 5, 1944, while an employee of Monarch Mills with Liberty Mutual Insurance Company the insurance carrier, as a result of coming in contact with or colliding with a fellow employee, both acting within the scope of their employment, and that said accident arose out of and in the scope of his employment."

In the preceding "Statement of Case", also a part of their "Opinion and Award", the Commission undertook to briefly review the testimony, from which I quote:

"The Claimant testified that on January 5, 1944, while working on a sand pile within a wire fence close to the mill, he asked Tom Grier for a cigarette and another boy come up and knocked him around and he spun around and the boy fell on him; that it was drizzling rain and muddy; that he reported to the shop and they sent Dr. McElroy down there and he put a cast on his leg; that he quit treating him and his mother called Dr. Maddox; that his leg pains to his hip and he can't do any work or stand on it; that he had asked Tom Grier for a cigarette and he got his tobacco out; that he saw Suber coming a way off but didn't see him when he got near; that they didn't wrestle and he didn't grab him.

"Tom Grier testified that Suber was going to the oil room and Claimant tried to reach for a cigarette and Suber wheeled and down they went; that he didn't see a shovel in Claimant's hand at any time.

"John Lee Davis, nicknamed 'Suber', testified that he was coming from the picker room and saw claimant piling up sand; that claimant caught him from behind and asked him for a cigarette and when he (Suber) wheeled around claimant fell; that there was no hard feelings between them."

Appellants' exceptions to the judgment of the circuit court affirming the award are now quoted in full in order to demonstrate that the controlling issue in the appeal is undoubtedly before us:

"1. That it was error to hold that Respondent is entitled to compensation and medical expense, and to affirm the Award of the South Carolina Industrial Commission; the error being that the only reasonable inference to be drawn from the evidence is that the Claimant did not sustain an accident within the meaning of the Workmen's Compensation Act.

"2. That it was error to hold that Respondent is entitled to compensation and medical expense, and to affirm the Award of the South Carolina Industrial Commission; the error being that the only reasonable inference to be drawn from the evidence is that the Respondent's injury did not arise out of his employment.

"3. That it was error to hold that Respondent is entitled to compensation and medical expense, and to affirm the Award of the South Carolina Industrial Commission; the error being that the Claimant's injury did not occur in the course of his employment.

"4. That it was error not to hold that Respondent was not entitled to any compensation and medical expense, and not to reverse the Award of the South Carolina Industrial Commission; the error being that Claimant's injury did not occur by accident arising out of and in the course of his employment.

"5. That it was error to hold 'It seems to me that there is no question but that the Claimant was on the premises of the employer, working at the time of the accident at a

place where he was supposed to be, working with a shovel furnished him by his employer, and that the injury complained of arose out of and in the course of his employment'; the error being that the only reasonable inference to be drawn from the evidence is that Respondent had ceased his work for the Appellant-Employer at the time he sustained his injuries, and that such injuries did not arise out of and in the course of his employment.

"6. That it was error not to hold that the Respondent was not entitled to any compensation; the error being that the only reasonable inference to be drawn from the evidence is that the Respondent's injuries did not have their origin in a risk connected with the employment, nor to have flowed from that source as a rational consequence, and consequently, did not arise out of and in the course of the employment."

The case was heard below, both by the Commission and the Circuit Court, and was argued here, before our decision was filed in *Mack v. Post Exchange,* 207 S. C., 258, 35 S. E. (2d), 838, which committed us to a so-called liberal construction of the compensation law in the particular that such acts as are necessary to the life, comfort, and convenience of the employee while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment; and included in that generalization are acts incident to the use of tobacco, when not prohibited by the employer. In that case the finding was that Mack was injured when attempting to light a cigarette, and an award of compensation for resulting injury was allowed to stand.

The instant case falls, I think, within that rule. The evidence does not fairly sustain a conclusion of willful assault by Davis or "horseplay" on the part of him or claimant, and the commission found neither. They categorically denied such in their testimony.

Claimant was working on the rough terrain of a scattered sand pile. He quaintly described the fact that the soil upon which he stood was not level by saying in his testimony that he "was about in a half straight up position, you see the sand pile was rolling on the sides, and it was slick." Davis was also a laborer for the mill and was carrying waste from it outside, which duty caused him to walk near where claimant was working and I think it was a very natural thing for claimant to do, to ask Davis for a smoke and reach for a cigarette, still holding his shovel with his other hand, and their bodily contact produced the remarkable result of claimant's fall over his shovel and the breaking of his leg. As stated above, both claimant and Davis denied intent or attempt at assault by either against the other, which amply justifies the commission's finding of accidental injury within the scope of the employment of both or, as the Act says: "Accident arising out of and in the course of the employment." Code sec. 7035-2 (f).

The accident seems to me typical of those which are not ordinarily foreseen, but in retrospect are seen to be incidental to the employment. It is fairly inferable that the injury would not have occurred on level ground or without the presence of a shovel. Surely under the *Mack case, supra,* if claimant had fallen over his shovel while trying to take a cigarette from his own pocket and had been injured, it would have been compensable. How then, can it be consistently said that even if he tried to take a cigarette from Davis' pocket without his permission, the resulting accidental injury is not compensable? The circumstances supposed and likewise those indicated by the evidence are incidental to the employment.

I think the proposition that claimant had stopped work when the accident happened is entirely unreasonable. Suppose the attention of a carpenter, working on a building or scaffold is attracted is attracted by a call or the sound of an automobile horn, or whatnot, turns to heed it, loses his balance, falls and is injured, could the injury be said to have

occurred during a work stoppage? I think certainly not and I see no practical difference in the supposed case and this, insofar as the course of employment is concerned. Both interruptions are too inconsequential to count.

As heretofore indicated, the evidence, in my opinion, is more than ample to sustain the findings, conclusions and award of the commission.

Certainly there is some supporting evidence, which latter is enough to remove the case from review of the facts by the Court. Fact-finding is the Commission's function, not the Court's. 34 SED 2-845, Workmen's Compensation, key 1939. The claimant was somewhat confused on cross examination by the skillful counsel for the employer and its insurance carrier, as were some of the other illiterate witneseses. They were not matches for him in that battle of wits, and I do not think that the testimony can be fairly tested unless that be kept in mind.

But I think appellants' brief presents an argument which is weakened by its fullness of surmise and speculation and is based upon the mistaken premise that smoking is not incidental to employment even when not prohibited. It is argued, quoting, "the matter of getting the cigarette from Suber (Davis) was not an act connected with the doing of the work"; and, again: "The producing cause from which respondent's fall and resulting injury originated was his effort to get a cigarette. * * *" But this was incidental to claimant's employment under the authority of *Mack v. Post Exchange, supra.* It is further said in the brief, to the same effect: "When respondent stepped aside to get a cigarette, stopping his shoveling to do so, he wasn't doing what he had been employed for," which is but stating again the main ground of the appeal, which I think is clearly untenable under the *Mack case.* It is elaborated in the following further quotations from the brief at folios 75, 79, 82 and 87:

"Whichever way we turn, in considering the evidence, we come back to the undisputed fact that the whole occur-

rence took place after Respondent had ceased his work for the purpose of getting a cigarette from Suber (and therefore the injury didn't arise out of or in the course of his employment)."

"Here there was a momentary abandonment of Claimant's employment and the voluntary subjection by Claimant of himself, for his personal purposes, to conditions and circumstances not at all involved in the work or incidental to it."

"It is apparent that, if Claimant had continued his work or had not stepped aside to accost a passer-by that he would not have been injured at all."

"But if we take any other view, it can only be that the Respondent had reached out to Suber for a cigarette and that Suber either hit his arm or ran into it, knocking him down. Under those circumstances certainly the act of Respondent in attempting to get the cigarette and in placing himself in that position was what induced and brought about a chain of circumstances which resulted in his injury. It had no rational connection with his work and certainly the act of Suber (Davis), which was claimed to have produced the injury, cannot be regarded as a risk incidental to the doing of the Respondent's work."

By way of conclusion of the brief the following arguments are made:

"There is no liability in this case because there was no relation between the service performed and the injury, no relation between the nature of the employment and the risk which produced Respondent's injury."

"Claimant's injury was the result of a cause not originating in his employment, or incidental to it, but the result of either the Claimant's own act or the act of another, not a fellow servant, (?) which act was induced by the voluntary act of the Claimant, for his personal purposes solely, in stepping aside from his work and accosting a passer-by."

(The references to Suber or Davis in the last foregoing as being not a fellow servant but a passerby are unjustified under the facts of the record, as has been pointed out.)

The brunt of the brief misses the mark, I think, when it concerns itself with the assault cases which have been heretofore decided by this Court. In *Thompson v. J. A. Jones Construction Co.*, 199 S. C., 304, 19 S. E. (2d), 226, and *Lanford v. Clinton Cotton Mills,* 204 S. C., 423, 30 S. E. (2d), 36, injuries resulting from willful assaults by fellow-employees were held compensable because the forerunning quarrels grew out of the work; and in *Elrod v. Union Bleachery,* 204 S. C., 481, 30 S. E. (2d), 73, the injury was not compensable because the motive for the assault arose from a personal difference between the employees about a matter entirely foreign to their employment. In my view these authorities are wholly inapplicable to this case for here the testimony negatives any quarrel or willful assault and the commission found none.

Yet the Chief Justice in his opinion plainly says: "But this case is governed by the case of *Elrod v. Union Bleachery.* * * *" I have read and reread it but I confess my inability to see any important similarity. It involved death from a wanton and stealthy attack by a fellow servant, provoked by an "eternal triangle". Enough of the facts of the case now before us have been stated to show, I think, its utter dissimilarity. I also think irrelevant the supposition of an assault by Davis upon claimant in response to the request for a cigarette for the simple reason that both deny such in their testimony and the commission found, properly I think, in accord with their evidence. Accidents are often inexplicable, whence the old saying that "truth is stranger than fiction".

There is an interesting conflict between the views of appellants and of the Chief Justice but they anomalously reach the same result. Appellants argue that the proximate cause of claimant's injury was his effort to gratify his desire to smoke, therefore there should be no compensation. The Chief

Justice says that appellant's act was not the proximate cause, so he should not be compensated. In fairness it should be reiterated that appellants' argument was submitted before the decision of the *Mack case, supra,* which I think explodes it.

An intriguing case, with some features in common with that under consideration, recently arose in *Georgia, Columbia Casualty Co. v. Parham,* 25 S. E. (2d), 147. There the compensation claimant's injury also resulted from the bumming of a cigarette by one employee from another, but the giver was hurt in that case instead of the beggar as here. Claimant was riding in the course of his duties in an open elevator and another employee just outside asked that he throw him a cigarette, which claimant undertook to do without stopping the elevator (just as the present claimant clung to his shovel) and claimant's arm which was extended by the act of throwing the cigarette was caught in the elevator shaft. The appellate court allowed compensation, which had been denied by the Industrial Accident Board, and the Court said: "Even if the claimant was negligent in throwing the cigarette this would not defeat his right to compensation. We think the evidence demanded a finding that the injury of the claimant arose out of and in the course of his employment. * * *"

From all of the above it clearly appears to me that the facts evidenced by the record and found by the commission, affirmed by the circuit court, require the confirmation of the award and the overruling of all the exceptions, quoted in full hereinabove, to the judgment of the circuit court.

I therefore think that the judgment should be affirmed.