[L. A. No. 4978.   In Bank.—August 10, 1917.]

## ATOLIA MINING COMPANY AND CALIFORNIA CASUALTY COMPANY, Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and J. D. MASON, Respondents; J. D. MASON, Applicant.

WORKMEN'S COMPENSATION ACT — INJURIES TO MINER AFTER CONCLUSION OF "SHIFT" OF WORK—CONTINUANCE OF EMPLOYMENT—SHOOTING BY WATCHMAN. — Where a miner working on a night shift proceeds to his tent after his hours of labor have ceased and there "washes up," but shortly afterward returns to the mine, in accordance with a recognized and approved custom, for the purpose of investigating certain unexploded blasts and thereby lessening the liability of injury by such unexploded blasts to the new shift, the duty thus assumed by him becomes a part of his work, and where such a miner, after pursuing his investigation and while returning to his tent, was shot by a watchman employed to guard the mine his injuries grew out of and occurred in the course of his employment.

ID.—RECKLESS SHOOTING BY A WATCHMAN.—Although the guard in such case may have acted recklessly, nevertheless, in view of the presumption favoring innocence of a deliberate assault with intent to commit murder, it must be held that the guard who fired the shot believed that the circumstances justified his act, and he was thus acting in the course of his employment, and the injured man was entitled to recover.

APPLICATION for Writ of Review against Industrial Accident Commission.

The facts are stated in the opinion of the court.

Gavin McNab, and Oliver B. Wyman, for Petitioners.

Christopher M. Bradley, for Respondents.

HENSHAW, J.—Review to consider an award of the Industrial Accident Commission.   J. D. Mason was employed as a miner by the Atolia Mining Company, petitioner herein. He was working on a night shift.   His hours of labor ended at 2 o'clock A. M.   It was a part of the duty of the men of the shift to drill blasting holes, load them with explosives and fire the shots at the end of their work.   Upon the morn-

ing of his injury he and two of his fellows had drilled fourteen holes, had loaded them, and when upon the point of leaving the mine had lighted the fuses and ascended the shaft about one hundred feet, where they waited, listened, and counted the explosions, as it was their duty to do. They counted but twelve explosions instead of fourteen. The evidence shows that it is the mining practice under such circumstances either to report the missed shots to the superintendent, or for the miner to safeguard the property and prevent injury to the next shift working in the same place, by making investigation and doing something toward remedying the conditions. It is further in evidence that in small mines such as the Atolia, the established mining practice is for one or another of the departing shift which has fired the shots to investigate and, if possible, remedy the dangerous situation left by the charges which have not exploded; also that because of the smoke, gas, and fumes caused by these explosions it is prudent to wait a reasonable length of time for their dissipation before visiting their locality. Under these circumstances it is shown that plaintiff, an experienced miner, who declares that it was "second nature for me to do those things; I have done it all my life," went to his tent about two hundred yards away, washed his face and hair, for he worked bareheaded, and returned to the mine. His fellows on the shift lived a longer distance from the mine and they went on home. He revisited the scene of the explosions about twenty minutes after. His investigation disclosed that all of the shots had been fired, which not infrequently occurs, as sometimes two or more of them go off simultaneously and the detonation sounds as one discharge. So he ascended the shaft and, carrying his miner's light, proceeded to his tent. Guards had been placed around the mine to prevent theft of its ores ("high-grading," as this form of theft is called by the miners). While he was walking to his tent he was, without warning and while still carrying his light, shot from the rear by one of the guards employed by defendant.

The contention under this writ is that his hours of labor having ceased, even though he was engaged in protecting his master's property, he was but a volunteer and cannot recover. Again it is contended that the evidence shows that Mason was the victim of a premeditated and unjustifiable assault, and therefore cannot recover.

Upon neither of these grounds can this award be annulled. The recognized custom of miners, carried out with the knowledge and approval of the mine owners (a custom which manifestly makes for the protection of the mine owners themselves, in lessening the liability of injury from unexploded blasts by the oncoming new shift, ignorant of the conditions), becomes in all essentials for this award a part of the duty of the miner in the performance of his work, and his injuries thus resulting grew out of, and occurred in the course of, his employment.

Upon the second proposition, while unquestionably it was a heedless and reckless thing for the guards thus to have shot a man without more investigation as to his character and intentions than was here shown to have taken place, yet every legal presumption favoring innocence, the argument will not be sustained that these guards deliberately perpetrated an assault to commit murder. To the contrary, it will be held that the man who fired the shot, himself the chief guard, believed that the circumstances justified him in so doing, and that thus he was acting within the line of his own employment, and under this view Mason, having been injured by the negligent performance of an act within the general scope of the duties of the employee inflicting the injury, is entitled to his recovery.

The award is sustained and the writ discharged.

Sloss, J., Shaw, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.