## WILLIAM ANDERSON vs. THE SECURITY BUILDING COMPANY.

Third Judicial District, New Haven, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Whether an employer knew or ought to have known that a servant was insane and liable to injure his co-employee, is immaterial, because the award of compensation under the Workman's Compensation Act is not dependent upon the employer having been at fault.

A personal injury to an employee which results from a risk incident to the actual conditions under which the employment is carried on, "arises out of" his employment, and it is immaterial whether or not the employer had actual or constructive notice thereof.

In the present case the plaintiff and *M*, a fellow employee, were employed by the defendant to do janitor work in an office building in the night time. One night while so employed *M*, being armed with two revolvers, became insane and without provocation repeatedly shot and seriously injured the plaintiff. *Held* that the plaintiff's injury "arose out of" his employment; and that although the employer may not have had actual or constructive notice that *M* was insane and likely to do injury, nevertheless such likelihood was in fact a condition under which the plaintiff was employed on the night in question, and therefore his injury was compensable.

Argued January 15th—decided March 1st, 1924.

APPEAL by the defendant from a judgment of the Superior Court in Fairfield County, *Haines, J.*, confirming an award of the Compensation Commissioner of the fourth district in favor of the plaintiff. *No error.*

*William H. Comley,* for the appellant (defendant).

*Carl Foster* and *Thomas C. Coughlin,* for the appellee (plaintiff).

CURTIS, J. The defendant in its appeal assigns errors on the part of the Superior Court in failing to grant certain motions to correct the finding of the Commissioner; also that the court erred in holding that under the subordinate facts the injuries complained of by the plaintiff "arose out of his employment."

As to the matter of correcting the finding, we deem it unnecessary to consider the reasons of appeal relating thereto, because if the corrections were made as requested they would not affect the award.

There was no controversy that the plaintiff was in the employ of the defendant on October 31st, 1921, and had been for several months, and on that date while at work received an injury. He was injured by being shot by a fellow employee. The plaintiff and a fellow employee, named Markus, were employed to do janitor

work in an office building in the night time.  The Commissioner found that after one o'clock at night the plaintiff "unlocked a door entering into one of the offices to go in and get a waste basket, and when he came out Markus was standing in the door with two revolvers in his hands.  He commenced firing and shot plaintiff twice, and then started back to the sixth floor.  The plaintiff fell to the floor and was trying to get to the elevator when Markus again came down from the sixth floor, stood over the plaintiff and fired at him until the revolvers snapped because they contained no more bullets.  The plaintiff was then able to get down to the second floor where he awakened one of the day janitors who called an ambulance and he was taken to St. Vincent's Hospital.  Subsequently Markus was arrested, adjudged insane, and committed to the Connecticut Hospital for Insane at Middletown."

The Commissioner also found that Markus was half crazed at the time.  The finding as to the conduct and crazed condition of Markus at the time, and the further finding to the effect that he had at most only an imaginary grievance against the plaintiff, makes the finding equivalent to one that on the night in question Markus was insane and dangerous to those about him, and that he injured the plaintiff because of this condition.  It appears from the finding that it was a condition of the plaintiff's employment at the time in question, that he was unwittingly working with an insane fellow employee armed with two loaded revolvers whose insanity impelled him to shoot the contents of the revolvers into the body of the plaintiff and severely injure him.  The plaintiff claims that the injury so received not only arose in the course of the employment, but out of it.

The course of the hearings before the Commissioner, and the arguments of counsel before us, indicate that in this case the basis upon which the Workmen's Com-

pensation Act rests was largely overlooked. The portions of the finding sought to be corrected, are portions in which the Commissioner finds facts to the effect that the defendant ought to have known the dangerous condition of mind of Markus, and that therefore it was at fault in continuing him in its employ.

It is, of course, immaterial in this proceeding whether or not the defendant was at fault. Under the Act a contract existed between the plaintiff and the defendant whereby it agreed to compensate the plaintiff for any injury "arising out of and in the course of his employment," independent of the question of its fault. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 145, 93 Atl. 245. When an employer puts an employee at work on a machine—although the employer may have exercised all reasonable care to provide that it is safe—which, without fault on his part, has a latent defect which causes it to break down and injure the employee, the injury is unquestionably one arising out of a condition of his employment. It is immaterial, under the Act, whether the employer knew or ought to have known of the existence of the dangerous condition. So where a fellow servant by his negligence injures another employee, compensation is due for the injury, since it arose from a condition of the employment, to wit, the possibility of such negligence of a fellow servant.

The knowledge of the employer as to the liability of the fellow servant to be negligent is immaterial. Such liability is a condition attending the employment.

The situation here presented of an insane man running amuck, is in no way analogous to a case where a fellow employee assaults another employee solely to gratify his feeling of anger or hatred; in such case "the injury results from the voluntary act of the assailant and cannot be said to arise either directly out of the employment, or as an incident of it." *Jacquemin* v.

*Turner & Seymour Mfg. Co.*, 92 Conn. 382, 384, 103 Atl. 115. Whenever an employer puts his employees at work with fellow servants, the conditions actually existing—apart from the possibility of wilful assaults by a fellow servant independent of the employment— which result in injury to a fellow employee, are a basis for compensation under the implied contract of that Act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work. "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on." *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799.

It is the actual conditions under which the employment is carried on that are important, not the conditions under which parties know or suppose that it is carried on. The possibility that a fellow servant may be or become insane and run amuck, is a condition under which one employed with fellow servants is required to perform his work. In *Kaiser Lumber Co.* v. *Industrial Commission* (Wis.), 195 N. W. Rep. 329, a workman in a lumber camp was required to sleep on the premises of his employer as a part of his contract of hire, and was required to sleep in a bunkhouse with sixty other em-

ployees in a single room; one of his co-employees became insane at night in the bunkhouse, ran amuck and injured the plaintiff. The court held that while occupying the bunkhouse the plaintiff was performing service incidental to his employment, and that the injury inflicted upon him by his insane co-employee was an injury growing out of and incidental to his employment. The possibility that an insane man may be running amuck upon the highway is one of the risks incidental to the employment of a servant in work involving exposure to the perils of the highways. *Katz* v. *Kadans & Co.*, 232 N. Y. 420, 134 N. E. 330.

We hold that the plaintiff's injury arose out of his employment, and was correctly held to be compensable.

There is no error.

In this opinion the other judges concurred.