15648

ELROD v. UNION BLEACHERY *ET AL.*

(30 S. E. (2d), 73)

November, 1943.

*Mr. Stephen Nettles,* of Greenville, S. C., Counsel for Appellants,

*Messrs. Price & Poag* and *Mr. LaRue Hinson,* all of Greenville, S. C., Counsel for Respondent,

May 9, 1944.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court:

The respondents in this case are the widow and dependent child of Harry Elrod who died as a result of a blow on the head at the hands of one Alvin Duncan while both Elrod and Duncan were employed and at work on the premises of the Union Bleachery of Greenville, S. C. A claim was filed shortly after his death in behalf of the dependents with the South Carolina Industrial Commission which alleged that the death of Elrod was due to an accident arising out of and in the course of his employment. The hearing commissioner filed his opinion July 6, 1943, awarding the claimants $13.12 per week for a period of 350 weeks and $200.00 for funeral expenses, all medical, doctors and hospital bills, and the costs of this action against the Union Bleachery and its insurance carrier, American Mutual Liability Insurance Company. Upon review by the full commission the opinion and award of the hearing commissioner was adopted as that of the Commission. Appellants then appealed to the Circuit

Court from the opinion and award of the full commission. The order of the Circuit Court affirming the findings of the Commission reads as follows:

"This matter comes before me on appeal. I have carefully studied the record and I think there is some evidence to sustain the findings of fact by the Industrial Commission.

"Their findings being conclusive, the appeal is dismissed and all exceptions are overruled."

From this order defendants appeal to this Court upon the following exceptions:

1. The injury and death of Elrod was not due to an accident, within the meaning of the Workmen's Compensation Act.

2. The injury and death of Elrod did not arise out of his employment, within the meaning of the Workmen's Compensation Act.

3. The only reasonable and proper conclusion from the evidence is that Duncan fatally assaulted Elrod because he had insulted his (Duncan's) wife, and that this misconduct on Elrod's part brought about his death, rather than any failure of duty on the part of the employer or any quarrel connected with the employer's business.

4. There is no evidence in the record on which an award for the claimants could properly be based.

The second exception to the effect that the injury and death of Elrod did not arise out of his employment within the meaning of the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.*, will be considered first in that this seems to be the paramount question in the instant case.

It is now well-established law in this State that where claim is made under the Workmen's Compensation Act, the Industrial Commission is the fact-finding body and this Court has a right to review the testimony for the purpose only of ascertaining whether or not there is any competent evidence to support the findings of the Industrial

Commission. If there is, then such findings are binding upon the Common Pleas and Supreme Courts of this State. *Anderson et al. v. Campbell Tile Co. et al.*, 202 S. C., 54, 24 S. E. (2d), 104.

Elrod and one "Woody" went to a cafe in the City of Greenville, S. C., late Saturday night, March 15, 1942. Upon entering the cafe "Woody", knowing Mrs. Roberts, spoke to her and introductions followed. Then Elrod asked Mrs. Duncan to go to ride with him and when she refused, insisted, asking that she "step out" with him at another time. Upon her return home she told her husband. At about 5 o'clock Sunday morning, March 16, 1942, while Elrod and Duncan were at work and while Elrod was in a stooped position helping push a heavy roller from one part of the plant to another he was struck by Duncan over the back of the head with a club, from which blow he shortly died.

The appellants contend that the injury and death of Elrod arose out of his advances to Mrs. Duncan and her subsequent complaint to her husband and therefore did not arise out of the employment. Respondents contend first that Elrod was a most industrious and energetic employee always anxious to improve himself while Duncan was just another employee, one who had already advanced as far as possible for one of his qualifications and that because of this Duncan nursed a hatred toward or was jealous of Elrod. There is considerable testimony to the effect that Elrod was a very valuable employee and was the type to be advanced, while Duncan was just the opposite; but there is no testimony whatever that Duncan was jealous or nursed any hatred toward Elrod because of this, or that Duncan was dissatisfied with his lot. On the contrary, there is much evidence to the effect that there had been no previous trouble whatever between the two, therefore this contention cannot stand. Respondents further contend that Elrod, an electrician, was called upon by Theodore Thompson, the foreman, to help others who were mechanics roll the heavy roller to another

part of the plant which required passing through a poorly lighted section and that this was a suspicious circumstance, but the testimony shows that this was not unusual and that the passageway was lighted practically as well as the other part of the premises; therefore, this contention is not borne out by the evidence.

There is testimony to the effect that Duncan was seen talking to the foreman several times that night and that at one time Duncan had the two-by-four in his hand, but there is no testimony whatever that Thompson knew or should have known the way Duncan felt toward Elrod.

The respondents take the position that the story told by Mrs. Duncan about being insulted by Elrod was an afterthought and fabrication for the purpose of a defense to the criminal charge after Duncan learned he had killed Elrod, but nowhere is there any testimony to this effect. On the other hand, there is testimony of several witnesses to the effect that he told them (his fellow workers) shortly before the killing occurred that he was going to beat Elrod up because he insulted his wife and in the testimony of Mr. H. A. Evatt we find the following:

"Q. Duncan came up from the rear, your rear? A. Yes, sir.

"Q. And also it was on Elrod's rear? A. That's right.

"Q. Now, did you hear Duncan say anything? A. No, sir.

"Q. He didn't say anything about why he had done it? A. Not until after he had struck the man.

"Q. After he struck, what did he say?

"Mr. Poag: We'd like to know how long it was after he struck him.

"Q. Tell him as well as you can, how long it was? A. It was right immediately after he struck him, after he fell to the ground there, from the second blow, and he went to punching him in the face. I says, 'Don't hit the man any more,' and he threw down his club behind him, and—

"Q. What did he say? A. He looked at me and said 'I hated to do it; I guess he will let my wife alone for awhile.'

"Q. Is that all he said, or do you know? A. That all I recollect hearing him say.'"

An award may be reversed if there is an absence of any evidence to support it, but the Supreme Court is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the fact-finding body, its findings are conclusive in the absence of fraud and neither this Court nor the Court of Common Pleas is at liberty to interfere with them, but such findings must be founded on evidence and cannot rest on surmise, conjecture, or speculation. *Smith et al. v. Southern Builders, Inc., et al.*, 202 S. C., 88, 24 S. E. (2d), 109.

In the instant case there is no evidence to show that the injury and death of Harry· Elrod arose out of his employment, therefore this exception is sustained.

Since a causal connection is found not to exist between the injury of and death of Harry Elrod and his employment by the Union Bleachery, it is unnecessary to consider the other exceptions.

For the foregoing stated reasons this Court is of the opinion that the award of the Industrial Commission and the subsequent order of the Circuit Court sustaining such award should be and are hereby reversed, and the case remanded for the purpose of entering judgment in favor of the appellants.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.