NANCY GIRACELLI, PETITIONER-DEFENDANT-IN-CERTIO-RARI, v. FRANKLIN CLEANERS & DYERS, INC., RE-SPONDENT-PROSECUTOR-IN-CERTIORARI.

Submitted January 16, 1945—Decided April 13, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PERSKIE.

For the petitioner-defendant-in-*certiorari, Ezra L. Nolan.*

For the respondent-prosecutor-in-*certiorari, Edwin Joseph O'Brien (I. Charles Lifland,* on the brief).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The writ was allowed to review a judgment of the Pleas affirming an award made by the Bureau in a compensation case. The petitioner, a young lady employed by the respondent corporation (a cleaning and dye-

ing company) and actually in charge of one of its branch stores at the time of the happening, was the victim of a brutal, criminal attack by a customer. The critical question is whether the injury by accident arose "out of" the employment.

The employer contends that the petitioner's injuries resulted from "a non-compensable assault and did not constitute an accident arising out of petitioner's employment." The facts are not in dispute. The petitioner was a sales clerk assigned to the particular store where her injuries were inflicted. At the time of the events that ensued she was engaged in the performance of service to the employer and was alone in the place. It was her duty to "wait on" customers; to receive garments that were left to be cleaned or conditioned and to hand over to customers such garments when they were called for. The establishment where the petitioner was employed consisted of two rooms, the front room or store proper abutting the street and a room in back of that. The garments of customers were hung up in the rear room on a garment rack. The assailant, a negro named Collins (on this occasion he gave his name as Brown) appeared at the store shortly after eight o'clock in the morning. Petitioner recognized him as a customer. He represented to the petitioner that he called for his wife's "two-piece suit;" and that the "ticket" for it was lost. Petitioner was not able to find that the suit was listed in the book in which a record of all such articles is kept. Collins insisted that his wife needed the suit to go to work and petitioner began a search for the garment, which he described, in the rear room. While so engaged, she heard a noise behind her and, turning, found Collins. with a knife in his hand, menacing her. Some time thereafter a letter carrier came into the store to deliver mail but in the interval Collins had perpetrated a rape on the petitioner. Alarmed at the arrival of the letter carrier, Collins fled from the store, followed by the mail carrier who brought about his capture.

That this petitioner met with an accident cannot be disputed. The evil experience which she suffered was an unlooked for mishap, an untoward event which was not expected or designed. *Bryant, Admrx.,* v. *Fissell,* 84 *N. J. L.* 72, 76.

Thus the question is narrowed to whether the accident arose out of and in the course of the employment. The statutory requirement—that the accident arise out of the employment—connotes the idea that the accident is in some sense due to the employment, from a risk reasonably incident thereto. *Bryant* v. *Fissell, supra (Fitzgerald* v. *W. G. Clark & Son* (1908), 2 *K. B.* 796). Applying that rule to the facts and circumstances proved, we think that the petitioner's injury arose out of the employment. From the facts, it seems to us that she was exposed to a danger of attack that in this instance became an actuality and that such danger was incidental to the employment. It was her duty to wait on all types of people who were customers; she was alone in the management of the store; she was obliged, in the discharge of her duty, to go into the rear room on the errand that took her there on this occasion. If an irate customer calling for his goods, displeased at the service rendered, had struck and injured a clerk attending to his wants, surely such a happening would be compensable. And a consideration of human behavior as we find it impels us to think that the experience visited on the petitioner in this case was a risk, attaching to the employment. *Cf. Trim Joint District School* v. *Kelly,* 7 *B. W. C. C.* 274 (where a teacher died of fractured skull from blows delivered by boys under his charge); *Weekes* v. *Stead,* 7 *Id.* 398 (foreman of company assaulted by man to whom he refused work). These English authorities may well be cited in our inquiry to ascertain legislative intent for the reason that their Compensation Act is basically the same as our own, *i. e.*, the injury must be the result of accident arising out of and in the course of the employment. Our Court of Errors and Appeals has held that "a risk is incidental to the employment when it belongs to or is connected with what the workman has to do in fulfilling his contract of service. And such a risk may be either an ordinary one, directly connected with the employment, or one extraordinary in character, indirectly connected therewith because of its special nature;" further, that "there must needs be a causal connection between the accident and the employment * * *. If the danger was one to which the employee was exposed because of the

nature of his employment, the accident arose out of the employment." *Gellman* v. *Reliable Linen Supply Co.*, 128 *N. J. L.* 443, 447. And in *Terlecki* v. *Strauss*, 85 *Id.* 454; *affirmed*, 86 *Id.* 708, the same court held that the accident arose out of the employment even when "the employment was not indeed the proximate cause of the accident, but it was a cause in the sense that but for the employment the accident would not have happened. The employment was one of the necessary antecedents to the accident." This view is quite apt when applied to the instant case. But for the conditions surrounding the petitioner's employment the accident would not have happened. What actually happened was incidental to the character of the employment and the conditions under which perforce it was performed.

The prosecutor argues that the petitioner suffered from the "personal motive" of her assailant which had nothing to do with the service required of her by her employer, and in support thereof cites *Coco* v. *Wilbur*, 104 *N. J. L.* 275 (a cranberry picker shot by some unknown person); *Walther* v. *American Paper Co.*, 89 *Id.* 732 (a watchman killed and robbed by a fellow employee); *Schnoll* v. *Weisbrod & Hess Brewing Co.*, 89 *Id.* 150 (driver, delivering beer, shot and killed by unknown assailant); *Mountain Ice Co.* v. *McNeil*, 91 *Id.* 528 (employee struck by fellow employee with ice pick); *Hulley* v. *Moosbrugger*, 88 *Id.* 161 (injury to employee arising out of sky-larking). Other cases are cited that, in our opinion, have no bearing on the question before us. From this list of authorities, clearly those concerning injuries inflicted by a fellow workman (*i. e.*, the Walther, McNeil and Moosbrugger cases) have no application; nor do the cases of injury and death caused by an unknown assailant for no known motive (*i. e.*, the Coco and Schmoll cases) persuade us that the happening under consideration did not arise out of the employment. In the Schmoll case nothing appeared save that the driver was killed by a pistol shot. In the Coco case the situation was about the same. But compare *Emerick et al.* v. *Slavonian, &c., Union*, 93 *N. J. L.* 283; *Foley* v. *Home Rubber Co.*, 89 *Id.* 474; *affirmed*, 91 *Id.* 323; *Nevich* v. *Delaware, Lackawanna and Western Railroad,*

90 *Id.* 228; *Gargano* v. *Essex County News Co.,* 129 *Id.* 369; *affirmed,* 130 *Id.* 559; *Trim, &c.,* v. *Kelly, supra; Weekes* v. *Stead, supra; Challis* v. *London and S. W. R. Co.* (1905), 2 *K. B.* 154 (engineer, driving engine, hit by stone thrown by boy on bridge). Much reliance is placed by the prosecutor on the case of *Minnesota, ex rel. School District, &c.,* v. *District Court Ilasca Co., &c.,* 140 *Minn.* 470; 168 *N. W. Rep.* 555; 15 *A. L. R.* 579, where compensation was denied a school teacher, ravished by an unknown assailant. There it was held that there was no causal connection between the employment and the criminal act. The criminal assault in that case occurred while the petitioner was on her way home, passing through a lonely, wooded section, an important fact which counsel, in the quotation extracted from the opinion, probably considered of no consequence. And further: The Minnesota statute (*G. S.* 1913, §§ 8195, *et seq.*) in 1918, when the case was decided, was quite different from ours. It did not cover workmen except while engaged in or about the premises where their work was done or their service required their presence; and it provided that compensable injuries "shall not include an injury caused by the act of a third person or fellow employee, intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." *Idem.* 8230, *supra.*

In the case before us the petitioner's presence in the rear room was a necessary part of her employment and in the prevailing circumstances she was exposed to the attack that took place. It was not something that happened to her as a member of the general public. Indeed it is not too much to say that at the time she was acting in obedience of the employer's direction in attending to the customer.

The only remaining question is whether the accident arose in the course of her employment. On this element we think there is no room for doubt. The time when, the place where the happening occurred, and the attending circumstances, none of which is disputed, demonstrate that the petitioner was acting in the course of her employment.

The judgment is affirmed, with costs.