This is a proceeding under the North Carolina Workmen's Compensation Act.
The matters stated in this paragraph are not in dispute. In September, 1947, J. M. Black, as principal contractor, was engaged in constructing a dwelling in Thomasville, North Carolina. He sublet the contract for plastering the ceilings and walls to the claimant's immediate employer, Arthur Reid, who kept five or more employees regularly employed in his business as a plastering contractor and who had not exempted himself from the provisions of the Workmen's Compensation Act, without requiring from Reid or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that Reid had complied with *Page 430 
the provisions of G.S. 97-93 with respect to procuring insurance to secure payment of compensation to his employees or satisfying the Industrial Commission of his financial ability to pay compensation directly to them. Reid had not, in fact, complied with either of the two alternative requirements of this statute. Moreover, the principal contractor, Black, did not carry any workmen's compensation insurance. The claimant had worked for Reid during the seven or eight months next preceding September 8, 1947. On that day he and six others were engaged in plastering the ceiling and walls of the dwelling in Thomasville under the personal supervision of their immediate employer, Reid, when Sonny Gannoway, one of the fellow employees, purposely threw a hod of mortar composed of sand and lime into the claimant's face, seriously injuring the claimant's eyes. The record does not disclose that the claimant and Gannoway had ever had any previous contacts with each other apart from their labor.
Both Reid and Black denied the validity of the claim filed against them by Withers for compensation for the injury occasioned by Gannoway's assault. The parties offered testimony conflicting in nature before Commissioner Buren Jurney, who presided at the initial hearing, with respect to the circumstances preceding and accompanying the attack upon the claimant.
When the evidence is viewed in a light favorable to claimant, it justifies the inferences that Gannoway, a comparative youth, had been working with claimant and the other employees of Reid for two or three weeks to learn the plasterer's trade; that claimant and his experienced co-workers frequently charged Gannoway with being too slow in his work; that on the day of the assault the claimant and Gannoway were at work in a hallway in the dwelling at Thomasville, and claimant considered that Gannoway's position in the hallway impeded claimant's efforts to plaster a wall at which claimant was working; that claimant ordered Gannoway "to get out of the way," and Gannoway stepped aside so as not to interfere with claimant's work; that in consequence of this event an argument ensued between claimant and Gannoway in which claimant asserted "that if he couldn't whip Sonny Gannoway that he would relieve him of his job" and in which Gannoway warned claimant not to "let his mouth get him in trouble"; that Gannoway thereupon left the hallway and entered an adjacent bathroom, where he worked for approximately ten minutes; that Gannoway then returned to the hallway, where claimant was peaceably pursuing his labor, and without a word hurled the hod of mortar into the claimant's face; and that the lime in the mortar so injured claimant's eyes as to destroy permanently at least ninety-five percent of his vision in each eye.
But when the testimony is construed adversely to claimant, it warrants the conclusions that the claimant, acting without apparent reason, *Page 431 
suddenly addressed an obscene threat to Gannoway; that Gannoway thereupon threw the mortar into claimant's face on account of anger and fear aroused by such threat; and that there was nothing whatever in either the conduct or language of the parties suggesting any connection between the quarrel and the employment.
After hearing the evidence, Commissioner Jurney found that both the claimant and Reid were bound by the Workmen's Compensation Act. He made further findings of fact accordant with the testimony tending to support the claimant's case as set out above, concluded on the basis of such further findings that the claimant had suffered an injury by accident arising out of and in the course of his employment, and awarded the claimant compensation as against his immediate employer, Reid, for the total and permanent loss of his eyes. He dismissed the claim as against Black, however, on account of the fact "that there is no evidence showing that J. M. Black had as many as five employees."
The award of Commissioner Jurney was reviewed by the Full Commission on the appeal of Reid from the adjudication against himself, and on the appeal of the claimant from the exoneration of Black from liability. Upon its review, the Full Commission approved the findings of fact made by Commissioner Jurney, but disagreed with his ruling exonerating Black from liability to the claimant. After finding and concluding for itself on the basis of the testimony at the hearing "that the claimant sustained an injury by accident arising out of and in the course of his employment with Arthur Reid September 8, 1947, when lime mortar was thrown into his face by a fellow employee causing total blindness," the Full Commission found and adjudged that the principal contractor Black, was liable to claimant after the exhaustion of the immediate employer, Reid, under G.S. 97-19 because Black sublet the contract for the plastering to Reid without requiring from Reid or obtaining from the Industrial Commission a certificate that Black had complied with the provisions of G.S. 97-93 and amended the award of Commissioner Jurney so as to hold the immediate employer, Reid, primarily liable and the principal contractor, Black, secondarily liable for compensation to claimant for total and permanent loss of his eyes. The Full Commission made an award accordingly, and Reid and Black appealed from the Full Commission to the Superior Court.
The Superior Court entered judgment setting aside the award of the Full Commission and exonerating both Reid and Black from all liability for compensation to claimant on the ground "there was not sufficient or competent evidence upon which to base a finding that the injury arose out of and in the course of claimant's employment." The claimant excepted to this judgment, and appealed therefrom to this Court, assigning errors. *Page 432 
The Full Commission made findings of fact sufficient in form as to the occurrence of the threefold conditions antecedent to the right to compensation under the North Carolina Workmen's Compensation Act, namely: (1) That claimant suffered a personal injury by accident; (2) that such injury arose in the course of the employment; and (3) that such injury arose out of the employment. G.S. 97-2 (f); Bolling v. Belk-White Co., 228 N.C. 749, 46 S.E.2d 838; Taylor v. Wake Forest, 228 N.C. 346, 45 S.E.2d 387; Wilson v. Mooresville, 222 N.C. 283,22 S.E.2d 907; McGill v. Lumberton, 215 N.C. 752, 3 S.E.2d 324; Pickard v. Plaid Mills, 213 N.C. 28, 195 S.E. 28; Holmes v. Brown Co.,207 N.C. 785, 178 S.E. 569; Winberry v. Farley Stores, Inc., 204 N.C. 79,167 S.E. 475; Conrad v. Foundry Co., 198 N.C. 723, 153 S.E. 266.
Under G.S. 97-86, "findings of fact by the Industrial Commission, on a claim properly constituted under the Workmen's Compensation Act, are conclusive on appeal, both in the Superior Court and in this Court, when supported by competent evidence." Fox v. Mills, Inc., 225 N.C. 580,35 S.E.2d 869. This is so even in proceedings where the courts would reach different conclusions if they were clothed with fact-finding authority. McGill v. Lumberton, 218 N.C. 586, 11 S.E.2d 873. Thus, we encounter this paramount question at the threshold of this appeal: Was there competent evidence at the hearing supporting the finding of the Full Commission that the claimant suffered a personal injury by accident arising out of and in the course of his employment with his immediate employer, Reid, when his fellow employee, Gannoway, purposely injured him by throwing the hod of mortar into his face?
The testimony plainly warranted the conclusion that claimant sustained a personal injury by accident because an assault is an "accident" within the meaning of the Workmen's Compensation Act "when from the point of view of the workman who suffers from it it is unexpected and without design on his part, although intentionally caused by another." Schneider's Workmen's Compensation Text (Perm. Ed.), section 1560; Brown v. Aluminum Co., 224 N.C. 766, 32 S.E.2d 320; Conrad v. Foundry Co., supra.
It has become axiomatic that under the Workmen's Compensation Act the words "arising in the course of the employment" relate to the time, place, and circumstances under which an accidental injury occurs, and the term "arising out of the employment" refers to the origin or cause of the accidental injury. Wilson v. Mooresville, supra; Lockey v. Cohen, *Page 433 
Goldman Co., 213 N.C. 356, 196 S.E. 342; Plemmons v. White's Service, Inc., 213 N.C. 148, 195 S.E. 370; Walker v. Wilkins, Inc., 212 N.C. 627,194 S.E. 89; Goodwin v. Bright, 202 N.C. 481, 163 S.E. 576; Hunt v. State, 201 N.C. 707, 161 S.E. 203. Manifestly, the finding that the claimant's injury arose in the course of the employment was required by the evidence that it occurred during the hours of the employment and at the place of the employment while the claimant was actually engaged in the performance of the duties of the employment. Hildebrand v. Furniture Co., 212 N.C. 100, 193 S.E. 294.
This brings us to the final inquiry on this phase of the controversy, i.e., whether the evidence supports the conclusion of the Industrial Commission that the injury arose out of the employment. An injury is one "arising out of the employment" within the purview of the Workmen's Compensation Act, when it occurs ill the course of the employment and is a natural or probable consequence or incident of it. Ashley v. Chevrolet Co., 222 N.C. 25, 21 S.E.2d 834. The test for determining whether an accidental injury arises out of an employment is this: "There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected." Conrad v. Foundry Co., supra.
The defendants, Reid and Black, assert that the entire evidence engenders the single conclusion that Gannoway assaulted claimant "solely under the impulse of anger, or hatred, or revenge, or vindictiveness, not growing out of but entirely foreign to the employment," and that by reason thereof they cannot be held liable for compensation for the resulting injury. Holmes v. Brown Co., supra; Harden v. Furniture Co.,199 N.C. 733, 155 S.E. 728. This position is untenable upon the present record. The claimant and Gannoway had no personal contacts extraneous to their employment. There was testimony at the hearing tending to show that a quarrel arose between the claimant and his fellow employee, Gannoway, over the work which they were performing for their common employer, Reid, and that such quarrel led Gannoway to throw the hod of mortar into claimant's face. Thus, it appears that the finding of the Industrial Commission that the resulting injury to the claimant originated in his employment and arose out of it was supported by evidence. It necessarily follows that the award made against Reid by the Industrial Commission on the basis of this finding conforms to well considered decisions of this Court holding that where a workman is injured by a fellow employee because of a dispute about the manner of doing the work he is employed to do, the accident to the injured workman grows out of the employment and is compensable. Hegler v. Mills Co., 224 N.C. 669,31 S.E.2d 918; Ashley v. Chevrolet Co., supra; Wilson v. Boyd *Page 434 
Goforth, Inc., 207 N.C. 344, 177 S.E. 178; Conrad v. Foundry Co., supra. These cases are bottomed on the sound judicial recognition of this industrial truth: "Where men are working together at the same work, disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. When the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment." Pekin Cooperage Co. v. Industrial Com., 285 Ill. 31, 120 N.E. 530.
The defendant Black asserts, however, that in any event the Superior Court properly vacated the award of the Industrial Commission as against him for the reason that all of the testimony disclosed and the Commission found that his personal employees numbered less than five. It is undoubtedly true as a general proposition that the only private employments covered by the Workmen's Compensation Act are those "in which five or more employees are regularly employed in the same business or establishment." G.S. 97-2 (a). But this general rule is subject to the exception created by G.S. 97-19, which was manifestly enacted to protect the employees of financially irresponsible sub-contractors who do not carry workmen's compensation insurance, and to prevent principal contractors, immediate contractors, and sub-contractors from relieving themselves of liability under the Act by doing through sub-contractors what they would otherwise do through the agency of direct employees.
As amended by Chapter 766 of the 1945 Session Laws, this statute reads as follows: "Any principal contractor, intermediate contractor, or sub-contractor who shall sublet any contract for the performance of any work without requiring from such sub-contractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such sub-contractor has complied with section 97-93 hereof, shall be liable, irrespective of whether such sub-contractor has regularly in service less than five employees in the same business within this state, to the same extent as such sub-contractor would be if he had accepted the provisions of this article for the payment of compensation and other benefits under this article on account of the injury or death of any employee of such sub-contractor, due to an accident arising out of and in the course of the performance of the work covered by such sub-contract. If the principal contractor, intermediate contractor, or sub-contractor shall obtain such certificate at the time of subletting such contract to subcontractor, he shall not thereafter be held liable to any employee of such sub-contractor for compensation or other benefits under this article. The Industrial Commission, upon demand, shall furnish such certificate, and *Page 435 
may charge therefor the cost thereof, not to exceed twenty-five cents. Any principal contractor, intermediate contractor, or sub-contractor paying compensation or other benefits under this article, under the foregoing provisions of this section, may recover the amount so paid from any person, persons, or corporation who, independently of such provision, would have been liable for the payment thereof. Every claim filed with the Industrial Commission under this section shall be instituted against all parties liable for payment, and said Commission, in its award, shall fix the order in which said parties shall be exhausted, beginning with the immediate employer. The principal or owner may insure any or all of his contractors and their employees in a blanket policy, and when so insured such contractor's employees will be entitled to compensation benefits regardless of whether the relationship of employer and employee exists between the principal and the contractor." Cases from other jurisdictions interpreting somewhat similar statutes have been collected in the following annotations: 58 A.L.R. 872-901; 105 A.L.R. 580-597.
Since it appeared from his own admissions and from other undisputed testimony on the hearing that Black undertook to construct the dwelling involved in this proceeding in the capacity of principal contractor and sublet the contract for the plastering of its ceilings and walls to Reid without requiring from Reid or obtaining from the Industrial Commission the prescribed certificate stating that Reid had complied with G.S.97-93 either by procuring compensation insurance or by satisfying the Industrial Commission of his financial responsibility as a self-insurer, it necessarily follows that the Industrial Commission properly adjudged that Black was liable to the claimant for compensation after the exhaustion of Reid, and that the Superior Court erred in setting aside the award against Black.
The Workmen's Compensation Act makes specific provision for compensation "for the loss of an eye." G.S. 97-31 (q). Furthermore, it prescribes that the "total . . . loss of vision of an eye shall be considered as equivalent to the loss of such . . . eye." G.S. 97-31 (t).
The court expressly adjudged that "even if this case is compensable there is no sufficient evidence to support a finding of fact, or conclusion of law, or an award allowing the claimant compensation for total blindness." It is to be noted that there was testimony on the hearing to the effect that the accident permanently destroyed ninety-five percent of the vision of each of the claimant's eyes. The defendants assert that this evidence is insufficient as a matter of law to establish a total loss of vision and cite Logan v. Johnson, 218 N.C. 200, 10 S.E.2d 653, which was decided in 1940, as authority for their position in this respect.
This decision lends color of support to the present contention of the defendants. In the Logan case, this Court corrected one of the erroneous *Page 436 
judgments rendered by the writer of this opinion while he was serving as a Superior Court judge and by reason thereof was still subject to what Chief Justice Bleckley of the Supreme Court of Georgia was pleased to call "the fallibility which is inherent in all courts except those of last resort." Broome v. Davis, 87 Ga. 584, 586. The defendants overlook the significant fact, however, that the General Assembly of 1943 converted the unsound notions which led the writer astray in the Logan case into sound law by amending the statute now embodied in G.S. 97-31 (t) so as to provide that "in cases where there is eighty-five percentum, or more, loss of vision in an eye, this shall be deemed `industrial blindness' and compensated as for total loss of vision of such eye." 1943 Session Laws, c. 502, s. 2. Thus it appears that the Industrial Commission rightly ruled not only that claimant's loss of vision was permanent, but also that it was total rather than partial.
For the reasons given, the award of the Full Commission was proper in all respects, and the judgment of the Superior Court setting it aside is hereby
Reversed.