224 P.2d 524

PEREZ v. FRED HARVEY, Inc. et al.

No. 5264.

Supreme Court of New Mexico.

Oct. 3, 1950.

Rehearing Denied Nov. 21, 1950.

W. T. O'Sullivan, Joseph L. Smith, Albuquerque, for appellant.

Rodey, Dickason & Sloan, Frank M. Mims, Jackson G. Akin, Albuquerque, for appellees.

COMPTON, Justice.

This is a proceeding under the Workmen's Compensation Act.

Appellant, Clarinda Perez, while employed by appellee, Fred Harvey, Inc., as a housemaid in the employer's hotel at Albuquerque, New Mexico, was shot and seriously injured by Rumaldo Padilla, a fellow servant. The cause was tried to a jury and at the close of the case the trial court sustained appellees' motion for a directed verdict and entered judgment dismissing the complaint. The question for decision is whether this action of the trial court was error.

There was evidence of the facts to follow before the jury. About 3:30 p. m., May 20, 1949, Padilla, houseman of the employer, entered a room where appellant was cleaning a dresser, locked the door and then said to her, "Clara, turn around." As she turned, noticing that he held a small pistol in his hand, she asked, "What are you going to do, Ray?", and without explanation he shot appellant in the face, thereby inflicting a severe injury from which she has not fully recovered. He then turned the weapon upon himself, inflicting a chest wound. For a time she was under medical care at St. Joseph's Hospital, incurring considerable expenses.

Drinking upon the premises by employees was prohibited, a regulation known both to appellant and her cousin, Ida Otero, a fellow servant. About 10:30 a. m., that day, Padilla admittedly consumed the equivalent of four drinks of whiskey but con-

tinued his work as a houseman in the hotel. At the noon hour he purchased a half pint of whiskey and drank most, if not all, of it previous to the assault. Around 3:00 p. m., Ida Otero, another housemaid working on the same floor as appellant, noticed Padilla's condition and that he had a bottle on his person. She requested appellant to assist her in taking the bottle from him. When appellant offered to help he said to her, "Don't get near me. If you get near me I will let you have it." It was noticed that he was highly nervous, "shaking all over." Manifestly, he was intoxicated, his face was flushed, he resisted and in struggling with them he tried to throw appellant to the floor; nevertheless, she grabbed his hands and Ida Otero removed the bottle from his pocket. He said nothing more, went downstairs and immediately returned and assaulted appellant.

Appellees contend that appellant suffers from a noncompensable assault. Endeavoring to sustain the contention, they offered evidence tending to show that the injury resulted from purely personal motives. They called the assailant, who testified that he and appellant were sweethearts and that the injury was the result of a distorted love affair between them. He says they were to be married, depending upon her father's consent, but that appellant wanted to postpone the marriage for a while; that about ten days previous to the assault he had received a call for military duty and that appellant's refusal to marry him immediately and the fact that he was soon to enter military service so depressed him that he decided, the day previous to the assault, that he would kill appellant and then commit suicide. They were to see appellant's father on the very evening of the assault when Padilla was to ask his consent to marry her. Padilla disclaims shooting appellant because of anger at the part she had taken in dispossessing him of the bottle. In response to questions on cross-examination, he stated he shot appellant because he was drunk and claimed not to remember shooting her.

As we view the matter, three theories present themselves in the evidence, under one of which no recovery could be sustained and under either of the other two, should the jury be persuaded to adopt either, there is sufficient evidence to support a verdict authorizing an award of compensation. If the injuries to appellant resulted from purely personal motives such as the distorted love affair testified to by the assailant who, fearing his sweetheart would not await his return from military service to marry him, resolved to slay her and commit suicide, there could be no recovery. The jury should be so instructed. Industrial Commission v. Strome, 107 Colo. 54, 108 P.2d 865; Scholtzhauer v. C. & L. Lunch Co., 233 N.Y. 12, 134 N.E. 701; Harden v. Thomasville Furniture Co., 199 N.C. 733, 155 S.E. 728; Elrod v. Union

Bleachery, 204 S.C. 481, 30 S.E.2d 73; Bridges v. Elite, Inc., 212 S.C. 514, 48 S.E. 2d 497.

■ On the other hand, if the jury should believe appellant's injuries resulted from an assault on her induced by anger, chagrin or even humiliation on the part of her assailant at being dispossessed by two female co-employees of his bottle of liquor while on duty with him in their respective jobs, we think it could reasonably be inferred there was causal relationship between such injuries and the work on which all were engaged. The reasonableness of this conclusion is emphasized by virtue of the knowledge possessed by each of the female employees of the employer's regulation against drinking liquor while on duty. There is a well defined line of decisions supporting recovery of compensation for injuries inflicted in an assault by one employee upon another following a quarrel having a causal relationship to the work on which they are engaged. The injuries so incurred are then said to arise out, as well as in the course, of the employment. Atolia Mining Co. v. Industrial Acc. Commission, 175 Cal. 691, 167 P. 148; Stulginski v. Waterbury Rolling Mills Co., 124 Conn. 355, 199 A. 653; Withers v. Black, 230 N.C. 428, 53 S.E.2d 668; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N.E. 530; Maryland Casualty Co. v. Cardillo, 69 App.D.C. 199, 99 F.2d 432. Annotation 15 A.L.R. 588 with intervening supplemental annotations to 112 A. L.R. 1258.

In Pekin Cooperage Co. v. Industrial Commission, supra, the Supreme Court of Illinois in sustaining a claim for compensation for injuries inflicted by one employee upon another in a fight arising over their work had the following to say, to wit: "Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment." [285 Ill. 31, 120 N.E. 532.]

■ There was substantial evidence, if believed, to go to the jury on the issue of whether the appellant's injuries resulted from anger or chagrin on assailant's part at being relieved of his liquor, carried on the job in violation of working regulations, and in his drunken condition a source of potential danger to his female co-workers. If the jury should find this was the inducing cause of the shooting, they should be told they are authorized to return a verdict in favor of the appellant. At the same

time they should be instructed that, if they believe the shooting resulted from the assailant's resolve to kill his sweetheart (appellant) and then commit suicide, there is no liability and their verdict should be for the appellees (defendants).

■ ·There is also evidence in the record which, appraised in one aspect by the jury and a verdict based on it, would support an award of compensation. The assailant under cross-examination admitted he was highly intoxicated as reflected by the further admission that he had no recollection of having fired the shot which injured appellant. There was testimony, too, from both co-workers, the appellant and her cousin, Ida Otero, that he was intoxicated. If the jury on such evidence should find appellant's assailant so highly intoxicated that he didn't know what he was doing, his acts would fall in the same category as those of an insane person, whether fellow employee or not, suddenly running amuck and injuring an employee. An injury so inflicted is held to arise out of the employment. Anderson v. Security Building Company, 100 Conn. 373, 123 A. 843, 40 A.L.R. 1119; John H. Kaiser Lumber Co. v. Industrial Commission of Wisconsin, 181 Wis. 513, 195 N.W. 329; Whaley v. Patent Button Co., 184 Tenn. 700, 202 S.W.2d 649; Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712. The same conclusion has been drawn in some decisions as to injuries inflicted upon an employee while in the course of his employment by a drunken stranger or co-employee. O'Rourke v. O'Rourke, 278 Pa. 52, 122 A. 172; Wakefield v. World-Telegram, 249 App.Div. 884, 292 N.Y.S. 588, affirmed 274 N.Y. 517, 10 N.E.2d 527. ·Cf. In re McNicol, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306. If the assailant inflicting an injury on a workman in the course of his employment is so highly intoxicated that memory has passed from him, we can see no difference in principle so far as the question at issue is concerned between acts done by him and those of an insane man. The rationale of the decisions insofar as they apply to injuries inflicted by an insane man, are well stated in Anderson v. Security Building Company, supra. The court said: "Whenever an employer puts his employees at work with fellow servants the conditions actually existing, apart from the possibility of willful assaults by a fellow servant independent of the employment, which result in injury to a fellow employee, are a basis for compensation under the implied contract of that act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and, if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out

of his employment as truly as if it had arisen from the negligence of Markus in doing his work." [100 Conn. 373, 123 A. 844.]

Decisions from other jurisdictions reflecting the rule of liberal construction to which this court is committed, Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000, are cited as follows: Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417; Giracelli v. Franklin Cleaners & Dyers, Inc., 132 N.J.L. 590, 42 A.2d 3; Pacific Employers Ins. Co. v. Industrial Accident Commission, 26 Cal.2d 286, 158 P.2d 9, 159 A.L.R. 313 (overruling five earlier decisions); Pacific Indemnity Co. v. Industrial Accident Commission, 86 Cal.App.2d 726, 195 P.2d 919.

In Giracelli v. Franklin Cleaners & Dyers, Inc., supra [132 N.J.L. 590, 42 A.2d 5], a sales clerk went to a rear room in search of a garment for a customer, and was there criminally assaulted by the customer. It was held that she met with an accident which arose out of and in the course of the employment within the meaning of the workmen's compensation law, the court saying: "In the case before us the petitioner's presence in the rear room was a necessary part of her employment and in the prevailing circumstances she was exposed to the attack that took place. It was not something that happened to her as a member of the general public. Indeed, it is not too much to say that at the time she was acting in obedience of the employer's direction in attending to the customer. * * *"

In Hartford Accident & Indemnity Co. v. Hoage, supra [66 App.D.C. 160, 85 F.2d 418], the plaintiff was attacked by a drunken or crazed stranger while at work in the employer's kitchen and the court, in sustaining the award, said: "We are of the opinion upon the undisputed facts in this case that the claimant's injury arose out of his employment, because the terms and conditions of his employment placed the claimant in the position wherein he was assaulted by the assailant and sustained the injuries from which he suffered. * * * It is true that claimant's injury was inflicted by a drunken or crazed stranger and was not such a danger as would ordinarily be apprehended by either the employer or the employee. Nevertheless, it was suffered by the claimant when at his place of duty, when upon the industrial premises of his employer, and while he was engaged at the work for which he was employed."

It is to be remembered that this case was determined below by the trial court's action in sustaining a motion for directed verdict against the appellant (plaintiff). In such circumstances, the court must view a plaintiff's evidence in the most favorable aspect, indulging all reasonable inferences to be drawn from plain-

tiff's evidence and disregarding all unfavorable testimony and inferences. Michelson v. House, 54 N.M. 197, 218 P.2d 861; Mesich v. Board of County Com'rs of McKinley County, 46 N.M. 412, 129 P.2d 974; Sandoval County Board of Education v. Young, 43 N.M. 397, 94 P.2d 508; Hepp. v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197.

So viewing the evidence of the plaintiff below, appellant here, we are constrained to hold that the trial court erred in instructing a verdict against her.

█ Appellant requests this court to fix fees for her attorney in representing her on appeal. Sec. 57-923, N.M. Stats. Annotated, provides: "That where compensation, to which any person shall be entitled under the provisions of this act, * * * shall be refused and the claimant shall thereafter collect compensation through court proceedings in an amount in excess of the amount tendered by the employer prior to the court proceedings, then the compensation to be paid the attorney for the claimant may be increased at the discretion of the court trying the same, or the Supreme Court upon appeal, to such amount as the court may deem reasonable and proper * * *."

The recovery of compensation is a prerequisite to the allowance of attorney fees. Her request must now be denied.

The judgment will be reversed with directions to the trial court to reinstate the case upon its docket, grant appellant a new trial and proceed in a manner not inconsistent herewith.

It Is So Ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.

On Motion for Rehearing.

COMPTON, Justice.

█ Upon motion for rehearing appellees, among other things, urge that our opinion as it now stands amounts to a direction to the trial court upon a subsequent hearing to direct the jury to enter a verdict for appellant, if it should find that her assailant at the time he shot her was so drunk he could not remember doing so. To avoid any possible confusion, we will clarify the matter by saying that we did not so intend, if the jury believes he got himself into that condition to bolster his nerve to the point of committing the assault planned because of love frustration.

The motion will be denied and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.